**Delores Ann NORMAN, Plaintiff-Appellant,**

v.

**FISHER MARINE, INC., Defendant-Appellee.**

Court of Appeals of Tennessee, Western Section, at Jackson.

Feb. 8, 1984.

Application for Permission to Appeal Denied by Supreme Court May 21, 1984.

**416**

Ricco Gatti, Jr., Memphis, for plaintiff-appellant.

Tim Wade Hellen, of Farris, Hancock, Gilman, Branan & Hellen, Memphis, for defendant-appellee.

TOMLIN, Judge.

The plaintiff's decedent, Donald Norman, a resident of Shelby County, was killed when he was thrown from a fishing boat that he was operating on the Tallahatchie River in the state of Mississippi. The boat, manufactured by the defendant, a Kentucky corporation, had been sold to a Memphis dealer some two years prior to the accident. The plaintiff, widow of the deceased, brought this suit based upon the doctrine of strict liability in tort. Her complaint alleged that the fastening devices designed to hold the boat seat in place were defective, and that they separated at the time of the accident, allowing her husband and the seat he occupied to be thrown from the boat.

There was a jury verdict in favor of the defendant. In this appeal, the plaintiff presents six issues for consideration:

1. The trial court erroneously charged the jury as to the application of the concept of comparative negligence to the doctrine of strict liability in tort as applied to the defendant.

2. There was no proof in the record to sustain the trial court's charge to the jury on the defenses of assumption of risk, abnormal/misuse of the product, and the plaintiff's negligence as the sole proximate cause of the accident.

3. It was erroneous for the trial court to charge the jury that the plaintiff had to show by a preponderance of the evidence that the defendant was guilty of negligence.

4. The trial court erred in charging the jury that they were to consider the conduct of the plaintiff's decedent as to whether or not he violated certain Mississippi statutes governing the possession and use of flotation devices and the manner and method of operating vessels on water.

5. That the court erroneously emphasized negligence and the violation of certain statutes on the part of the plaintiff's decedent by recharging the law to the jury on these subjects.

6. That the verdict was the result of caprice, passion, and unaccountable prejudice on the part of the jury.

While we will review each issue in light of the facts and the law, we are of the opinion that none of them has merit.

The product in question was a flat-bottom fishing boat powered by an outboard motor which had been sold by the defendant to a Memphis dealer in October, 1976. The brother-in-law of the deceased purchased the boat in 1977 from the original purchaser. On July 31, 1978, the deceased borrowed the boat. He and a friend went fishing on Sardis Lake in Mississippi. After eating breakfast around 7:00 a.m., they began fishing on the lake between 8:00 and 9:00 a.m. Having caught no fish, they returned to the boat dock around noon, and after about a fifteen- or twenty-minute respite, they decided to go up the Tallahatchie River. At that time the Tallahatchie River was at flood stage and was out of its banks. The only way one could tell where the river channel ran was by the line of trees on either side. Even then it was difficult to tell which was the channel and which was merely an opening in the tree lines. It is conceded that the Tallahatchie River is a twisting, winding river, with one sharp turn after another. The plaintiff's decedent and his companion went a considerable distance up the river where they fished for approximately one-half hour, again catching no fish. They were returning to the boat dock when the accident took place at approximately 3:00 p.m.

The sole witness to this tragic accident was the decedent's companion, Charles McDaniel. The deceased was operating the boat, which had a small console slightly to the rear of the middle of the boat containing the steering wheel and other equipment. The throttle for the motor was located just to the right and rear of the console on the right gunwale of the boat. The seat for the operator of the boat was composed of a rectangular fiberglass cooler that appears to have been a 48-quart size, with handles on each end. A cushioned seat was constructed on top of the cooler, with the rear portion of the cushion slightly elevated to form a small "back." This cooler fit inside a rectangular frame, approximately six inches in height, secured to the floor of the boat. On the front and rear of this frame were vinyl straps. One end of each strap was permanently secured to the frame. The strap then passed through the front and rear handles of the cooler respectively, and the other end fastened to the frame with a brass snap. Each snap consisted of three parts. A male part was affixed to the frame by means of a metal screw. The female portion of the snap, consisting of two parts, was permanently clamped together through a hole in the end of the strap.

For some time preceding the accident, the deceased was sitting astraddle this seat, which was positioned slightly to the right of the boat's centerline. At the stern or rear of the boat was a platform secured to the top of the gunwale of the boat and the stern. Mounted on the center of this platform was a fishing seat fastened to a post or pole approximately two feet high. This was located in the center of the platform. McDaniel testified that he was sitting on the left side of the platform, facing the front of the boat, holding on to the side of the boat with one hand and to this seat post with the other.

McDaniel testified that during the run up the river, as well as the return trip, the deceased was operating the boat at about twenty to twenty-five miles per hour. Just before the accident the boat was cutting the corner on a right-hand curve when they suddenly saw several tree stumps out in the stream, directly in their path. Without reducing the speed of the boat, the deceased cut the boat sharply to the left to avoid striking the stumps. This maneuver placed the boat on a course directly toward the tops of the trees located on the left side of the river. The deceased again cut the boat, this time sharply to the right, in order to avoid running into the trees. This maneuver caused the right side or gunwale of the boat to go down and the left side of the boat to go up. At that time McDaniel was not looking directly at the deceased, but he was looking at the trees which they had just sought to avoid on the left side of the stream. Through his right peripheral vision McDaniel saw the deceased, along with the boat seat, being projected out over the left side of the boat into the water. He testified that the deceased cleared the top of the left gunwale by two to three feet. McDaniel immediately jumped down to the floor and grabbed the controls of the boat, which was headed toward the right bank of the river.

After regaining control of the boat and reducing its speed McDaniel looked back up the river. He saw the seat floating in the water, but he did not see the deceased. He immediately turned the boat around and went back to where the seat was floating, where he dropped anchor and began to dive in the water in an attempt to find the deceased, but to no avail. The deceased's body was recovered by a rescue team approximately four hours later. An autopsy performed the next day at the County Hospital at Oxford, Mississippi, showed no evidence of injury. Cause of death was listed as suffocation by drowning. Blood was also drawn from the body and a blood alcohol analysis, which we will discuss later in this opinion, was performed.

McDaniel testified that he and the deceased bought two six-packs of beer that morning, along with some Cokes. The sheriff's department found one unopened beer in the boat after the accident. While the boat contained two flotation devices, or life preservers, neither the deceased nor

McDaniel was wearing one at the time of the accident. It is uncontroverted that the deceased could not swim.

In her complaint, the plaintiff pled all the elements necessary to state a claim in strict liability in tort, specifically relying upon § 402(a) of Restatement 2d, Torts. In an amendment to her complaint, the plaintiff alleged that the seat assembly and its component parts were defectively designed and constructed, and that the boat was placed in the stream of commerce in a defective condition; that it was substantially in the same condition at the time of the accident as it was when it left the hands of the defendant, and that these defects caused the seat to separate, resulting in the seat and the plaintiff's decedent being ejected from the boat into the river, where he drowned.

In its answer, the defendant denied all these allegations. It denied that the fastening devices broke, failed, or separated, and denied that any alleged defect in the boat was a direct and proximate cause of decedent's death. As affirmative defenses the defendant plead assumption of risk, abnormal and misuse of the boat by the deceased, and alleged that the accident and death of the deceased were caused solely and proximately by the negligence of the deceased in that (a) he failed to wear a life preserver; (b) he was operating the boat when his ability was impaired by intoxicants; and (c) he was operating the boat in a dangerous and reckless manner.

Aside from these common law defenses, the defendant alleged that the plaintiff's decedent violated Mississippi Code Annotated § 59–21–81, entitled "Requirements as to lights; personal flotation devices and other safety equipment; vessels to be sea Worthy;" and M.C.A. § 59–21–83, entitled "Operation of vessel in reckless manner prohibited," which statutory violations were negligence per se. The defendant also plead the Mississippi Comparative Negligence statute, M.C.A. § 11–7–15, asserting that this statute was applicable to the case at bar, notwithstanding that the suit was brought upon the theory of strict liability in tort, contending that any damages recoverable by the plaintiff should be diminished in proportion to the quantum of negligence attributable to the deceased. We will examine these statutes as they relate directly to the issues raised by this appeal.

## I. COMPARATIVE NEGLIGENCE AND THE DOCTRINE OF STRICT LIABILITY

Inasmuch as the accident happened in Mississippi, this case was tried pursuant to Mississippi substantive law. The first issue raised by the plaintiff is that the trial judge erroneously charged the jury on the doctrine of comparative negligence, and that by doing so he charged the jury that contributory negligence was a defense to an action brought under the doctrine of strict liability in tort in Mississippi.

While in his charge the court did define the concept of negligence, he instructed the jury in part as follows:

Ladies and Gentlemen, the Court is going to instruct you now as to the theory of strict liability in tort law. One who sells any product in a defective condition, unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer or to his property if, A, the seller is engaged in the business of selling such a product, and B, it is expected to and does reach the user or consumer without substantial change in a condition in which it was sold.

The rule stated ... [above] applies although, A, the seller has exercised all possible care in the preparation and sale of his product, and B, the user or consumer has not bought the product from or entered into any contractual relation with the seller.

The manufacturer of a product who places it on the market for use under circumstances where he knows that such product will be used without inspection for defects in the mechanism or design which is claimed to be defective is liable

for injuries proximately caused by defects in the manufacture or design of the product which caused it to be unreasonably dangerous and safe (sic) for its intended use, provided the product was being used for the purposes for which it was designed and intended to be used and was not substantially changed from the way it was made.

. . . .

The plaintiff has the burden of proving by the preponderance of the evidence all the facts necessary to prove each of the above; one, the defect must be the proximate cause of the injury; two, recovery may be denied in the case of alteration or abnormal use of the product; three, assumption of risk, or when user is aware of the defect and damage and proceeds unreasonably to make use of the product is a defense to strict liability.

The basis of liability in product liability cases is putting into the stream of commerce a defective or dangerous product. Liability is not based on ordinary negligence, but is based on the consideration of protecting the public from such product.

In Prosser, *Law of Torts* § 65, pp. 416–417 (4th Ed.1971) contributory negligence is defined as follows:

Contributory negligence is conduct on the part of the plaintiff, contributing as a legal cause to the harm he has suffered, which falls below the standard to which he is required to conform for his own protection.

In many jurisdictions, Tennessee being one of them, contributory negligence on the part of a plaintiff will ordinarily bar his recovery in a suit in tort. However, in Tennessee, as in many other jurisdictions, contributory negligence on the part of a plaintiff is not a bar to recovery in a suit based upon strict liability in tort.

The state of Mississippi has what is known as a comparative negligence statute. This statute simply codifies one of the means in dealing with what has been called the "harshness" of the contributory negligence rule. This Court is not characterizing the contributory negligence rule as such, but in some measure is simply seeking to explain the rationale behind the Mississippi statute, which reads as follows:

§ 11–7–15. *Contributory negligence no bar to recovery of damages—jury may diminish damages*

In *all* actions hereafter brought for personal injuries, or where such injuries have resulted in death, or for injury to property, the fact that the person injured, or the owner of the property, or person having control over the property may have been guilty of contributory negligence shall not bar a recovery, but damages shall be diminished by the jury in proportion to the amount of negligence attributable to the person injured, or the owner of the property, or the person having control over the property. (Emphasis supplied).

Before proceeding to explain to the jury about the law of comparative negligence, in his charge the court said: "Now, contributory negligence ordinarily is a bar and is not used as a defense in a case where strict liability in tort is used, but in the state of Mississippi they have a theory called comparative negligence, and I am going to instruct you now on that theory of the law."

Although in describing the application of comparative negligence to a potential plaintiff's verdict in a case such as this the court did talk in terms of the defendant's "negligence," it was clear that the reference was to the defendant's liability, if any. The court instructed the jury that after determining any liability on the part of the defendant and arriving at the sum of money that would adequately compensate the plaintiff for the decedent's death, if they were to find any negligence on the part of plaintiff's decedent, they were to then determine the proportion of the causal negligence of the plaintiff to the causal negligence as a whole. Following that, they were to multiply the sum of money determined as damages for the plaintiff's decedent by the percentage figure representing the proportion of his causal negligence,

then subtract the amount from the sum originally determined to be plaintiff's damages, leaving the remainder as the amount of damages actually to be awarded.

In our opinion, this general charge is in keeping with the law of the state of Mississippi. The comparative negligence statute provides that it applies to all actions. An action in strict liability in tort is not excepted; thus, under the language of the statute, there is no prohibition against applying it to strict liability cases. While there is division of authority among the states with comparative negligence statutes as to whether the statute may be applied in strict product liability cases, it appears from the case law in Mississippi that the courts there have applied the two concepts together. In *Edwards v. Sears, Roebuck & Company*, 512 F.2d 276 (5th Cir.1975), decedent's widow brought an action against the manufacturer and retailer of tires for the death of her husband in an automobile accident allegedly caused by tire failure. One of the theories of liability asserted by the plaintiff was strict liability in tort. One of the contentions made by the defendant was that at the time of the accident the plaintiff's decedent was driving his automobile at a highly excessive rate of speed while under the influence of alcohol. In approving the charge of the court relating to both comparative negligence and strict liability, the U.S. Court of Appeals for the Fifth Circuit said:

It is clear, however, that if the decedent was driving at an excessive speed while intoxicated his action would constitute contributory negligence, and the trial court so instructed the jury. The trial court instructed the jury that if the decedend was found to have been contributorily negligent, and if such negligence was the sole proximate cause of the accident, its verdict should be rendered in favor of defendants. The court further instructed the jury that if it found that the decedent was contributorily negligent, but that the defendants also proximately caused or contributed to George Edwards' death, damages could be recovered but must be reduced in proportion to the extent to which decedent's negligence contributed to the accident. We believe the trial court took the correct path through the thicket of strict liability and contributory negligence. While the issue has not been considered by the Mississippi Supreme Court, a noted commentator has suggested that the proper interaction between strict liability and contributory negligence "should be apparent on reflection. It is to apply a system of comparative fault of the 'pure type' and apply it to strict liability as well as to negligence." Wade, Strict Tort Liability 44 Miss.L.J. 825, 850 (1973).

*Id.* at 290. Thus, the jury was correctly allowed to consider the case on a strict liability theory.

In *Toyota Motor Company, Ltd. v. Sanford, et al*, 375 So.2d 1036 (Miss.1979), the Mississippi Supreme Court was reviewing an appeal in a wrongful death action brought against an automobile manufacturer. As to this issue under consideration, that court said:

The evidence at the trial of this case was conflicting as to whether the fatal accident was caused by negligence of Windham in the operation of the pickup or by negligence of Toyota based by strict liability in tort.

On the question of contributory negligence, Toyota cites, among other cases, holding to the same effect, *Edwards v. Sears, Roebuck and Company*, 512 F.2d 276 (5th Cir.1975)....

*Id.* at 1038.

Quoting a substantial portion of the language set forth hereinabove, the court concluded: "[W]e do not consider it necessary to reach or to decide that question in this case, although it appears to have merit ...." *Id.*

The above is as close as a Mississippi appellate court has come to approving the application of the comparative negligence doctrine to actions brought upon strict liability in tort. However, cases in other jurisdictions, as well as other legal authorities,

acknowledge that Mississippi does apply the comparative negligence statute to products liability actions brought on the doctrine of strict liability in tort. *See Pan-Alaska, Etc. v. Marine Construction & Design Company,* 565 F.2d 1129 (9th Cir. 1977); *Murray v. Fairbanks Morse,* 610 F.2d 149 (3rd Cir.1979); Applicability of Comparative Negligence Doctrine to Actions Based on Strict Liability in Tort, 9 A.L.R. 4th 633, 641 (1981); 2 Grant, *Sum. Miss. Law* § 2395 (1969) Cum.Supp. (1983).

▆▆▆ While we are of the opinion that the court's charge was not erroneous, but instead was in keeping with Mississippi law, we agree with the contention of appellee that this issue was made moot by the jury verdict. Mississippi's comparative negligence statute is of the "pure" type— that is, a plaintiff can recover something even if his contributing fault exceeds fifty percent. Stated another way, if the proof showed that the defendant was liable, even if the contributing fault of the plaintiff was ninety-five percent of the total causation of one hundred percent, his claim would not be barred, but he could recover some amount. Where there is evidence of negligence on the part of the plaintiff, only when the trier of fact finds that the negligence of the plaintiff was the sole, proximate cause of the accident would a jury verdict for the defendant be proper. Inasmuch as the jury in this cause found for the defendant, the doctrine of comparative negligence never came into play. The jury either had to have found that the plaintiff had (a) failed to prove those elements necessary to sustain a case of strict liability in tort, or (b) that the actions of plaintiff's decedent were the sole proximate cause of this fatal accident.

## II. THE COURT'S CHARGE ON ASSUMPTION OF RISK, MISUSE OF PRODUCT AND DECEDENT'S NEGLIGENCE

▆▆▆ The plaintiff further complains that there is no evidence in the record to support the trial court's charge to the jury as to assumption of risk, abnormal use of the product, or a charge concerning sole and proximate negligence on the part of the plaintiff's decedent. We think this issue is without merit. To support a jury instruction there only needs to be some evidence in the record which would support a verdict on that instruction, even though slight. *Ringer v. Godfrey,* 50 Tenn.App. 559, 362 S.W.2d 825 (1962). There was proof in the record that the plaintiff's decedent was aware of the condition of the boat. Furthermore, the design of the boat seat and its condition were open and obvious to anyone observing it. Furthermore, the dangers presented by the flooded river were obvious to anyone on the river, and the plaintiff's decedent was occupying the seat in question, as well as driving the boat.

As to the conduct of the decedent, the proof is uncontradicted that he was operating this boat at twenty to twenty-five miles per hour on a river that was flooded out of its banks, containing sharp turns to both the right and the left. At no time did he ever reduce the speed of the boat while negotiating any of these sharp turns. His companion did not deny giving a statement following the accident to the sheriff to the effect that he asked the decedent to slow down, that he was driving too fast, to which the plaintiff's decedent replied that he could handle it.

The proof reveals that between the hours of 8:30 to 9:00 a.m. and 3:00 p.m., and probably a shorter period of time than that, together the decedent and McDaniel had consumed eleven cans of beer. McDaniel was uncertain as to how many of these eleven cans he consumed. However, a blood alcohol test conducted the day following the accident showed that plaintiff's decedent had a blood alcohol content of .123. A blood alcohol content of .10 is sufficient to constitute driving while intoxicated upon the streets and highways of this state. There was uncontradicted medical testimony to the effect that the results of this blood alcohol test showed sufficient alcohol to produce euphoria, loss of inhibition and prolonged reaction time. In addition, a per-

son with the amount of alcohol in his blood as revealed by this test would suffer proprioception, a phenomenon of not being able to determine the relationship of one's body to the earth's surface or to the object in which one is riding—in other words, physical disorientation.

When all these facts are considered together, we think there is sufficient evidence to support a charge of abnormal/misuse of the product and the defendant's defense to the effect that the negligence of the plaintiff's decedent was the sole and proximate cause of the accident and decedent's death.

Next, the plaintiff contends that the court charged the jury that she was required to show that the defendant was guilty of negligence by a preponderance of the evidence. While this contention on the part of the plaintiff is technically correct, and while the charge is technically inaccurate, we hold that it is harmless error. This paragraph is found in the very last part of the court's charge. Repeatedly in the earlier portions of the charge the court told the jury that this was a case involving strict liability in tort, and that the plaintiff did not have to prove negligence on the part of the defendant. The paragraph immediately preceding the paragraph complained of by the plaintiff in her brief reads as follows:

> Ladies and Gentlemen of the jury, in this case the defendant has relied on certain statutes of the State of Mississippi which the defendant's lawyer has read to you. The Court charges you that the violation of the state's statutes is negligence per se, or negligence in and of itself.

The inappropriateness of the paragraph in the charge complained of is that the court obviously got "plaintiff" and "defendant" transposed, because the plaintiff did not seek to predicate liability against the defendant based upon any statute, but the defendant did. The charge in general was clear that this was a case based upon strict liability and not negligence. Therefore, we are of the opinion that whatever error was made in this paragraph of the charge it was harmless error.

The plaintiff contends that the trial court erroneously charged the jury that the statutory law of Mississippi, specifically M.C.A. § 59–21–81, was violated by the decedent. The court did not charge that the plaintiff's decedent violated this statute. That was within the province of the jury. The defendant did plead and the court did charge that a violation of either or both of these two statutes by the decedent would constitute negligence per se, and it was up to the jury to consider whether such violation would be utilized by the jury in diminishing any damages awarded to the plaintiff or be considered as part of the issue of whether or not the plaintiff's decedent's negligence was the sole and proximate cause of the accident.

Section 59–21–81 reads in part as follows:

> Every vessel shall have on board a Coast Guard approved personal flotation device for each person aboard such vessel.... Such vessel shall not be operated unless in a safe and seaworthy condition; the owner and operator shall employ such safety devices as may be necessary for the safe operation of such vessel....

The plaintiff's decedent obviously was aware of the fact that he could not swim. He was also obviously aware of the fact that there were many hazards present that day in the Tallahatchie River, and that he was in sole charge of the operation of the boat. The autopsy revealed not a single sign of injury to his body. The sole cause of death was asphyxiation by drowning. There is more than ample evidence to justify this charge and to support a causal connection between the lack of utilization of a life preserver and the death of the decedent.

The second statute charged by the court to the jury and complained of by the plaintiff is M.C.A. § 59–21–83, entitled "Operation of vessel in reckless manner prohibited." It reads in part as follows:

No vessel shall be operated within this state in a reckless or negligent manner or at a rate of speed greater than is reasonable and prudent under the then existing circumstances or when the operator is so physically or mentally incapacitated as to be incapable of safely operating such vessel, or while the operator is under the influence of intoxicating liquor or narcotics . . . .

Again, the plaintiff is in error when she contends that the court charged the jury that the plaintiff's decedent violated this statute. As with the previous statute, the court early on read to the jury the contentions of the defendant, one of which was that the decedent was operating the boat while under the influence of alcohol, and that he was operating the boat in violation of the statutory law of Mississippi. Again, there is more than ample evidence in this record to justify the inclusion of this statute in the court's charge. Insofar as intoxication is concerned, the evidence is uncontradicted that the plaintiff's decedent was under the influence of intoxicating liquor at the time of the accident. Two doctors testified that in their opinion, the amount of alcohol in the decedent's blood at the time of the accident would have retarded both his reactions and his judgment.

There was also evidence to the effect that he was operating the boat at an unsafe rate of speed in conditions considered by some to be dangerous and hazardous. This evidence would be sufficient to support a conclusion by the jury that either the intoxication, and/or the speed, and/or the method and manner of operating the boat had a causal relationship to this accident. This issue is found to be without merit.

As to the last two issues raised by the plaintiff, we see no need to go into them in much detail. Insofar as the alleged overemphasizing of negligence on the part of the plaintiff's decedent, the recharging of a portion of the law was done in order to correct an error in the charge called to the court's attention by defense counsel. The court repeated only a brief portion of the charge and did not in any way place undue influence upon it. As to caprice, passion, and prejudice on the part of the jury, there is nothing referred to in this record supporting this issue.

■ The plaintiff had the burden to establish all the elements necessary to invoke the doctrine of strict liability in tort. The defendant had the responsibility to establish by a preponderance of the evidence its contention that the decedent's negligence was the sole and proximate cause of the accident. There is more than ample evidence in this record to support a jury verdict for the defendant that the negligence of the plaintiff's decedent was the sole and proximate cause of his death.

The judgment of the court below is affirmed. Costs in this cause are taxed to the plaintiff, for which execution may issue, if necessary.

NEARN, P.J. (W.S.), and CRAWFORD, J., concur.