# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### May 26, 2016 Session

## JAMES BOSHEARS v. CLEAVE C. BROOKS

**Appeal from the Circuit Court for Anderson County**
**No. B4LA0094     Donald Ray Elledge, Judge**

---

**No. E2015-01915-COA-R3-CV**
**FILED-JULY 6, 2016**

---

This appeal arises from a negligence case brought after an automobile accident. James Boshears ("Boshears") was a passenger in a vehicle driven by his girlfriend that was struck by a vehicle driven by Cleave C. Brooks ("Brooks"). Boshears sued Brooks in the Circuit Court for Anderson County ("the Trial Court"). Boshears alleged that Brooks was negligent in operating his vehicle. Brooks asserted that he suffered a stroke immediately prior to the accident, that he lost consciousness, and that, consequently, he could not be found negligent. The case was tried to a jury. The jury found that Brooks was not at fault. Boshears appealed to this Court. On appeal, Boshears argues that the Trial Court erred in charging the jury with sudden emergency when comparative fault was not raised by Brooks. Boshears also asserts that the Trial Court erred in charging the jury on both sudden emergency and loss of consciousness. We affirm the judgment of the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Timothy L. Baldridge, Knoxville, Tennessee, for the appellant, James Boshears.

Dallas T. Reynolds, III, Knoxville, Tennessee, for the appellee, Cleave C. Brooks.

## OPINION

## Background

The accident at the heart of this appeal occurred in Oak Ridge, Tennessee on April 29, 2013. Boshears was a passenger in a vehicle driven by his girlfriend, Nicole Penchion ("Penchion"). The pair were heading east on Pennsylvania Avenue near its intersection with N. Tulane Avenue and Providence Road when Brooks, who was driving to the west, turned left and collided with Boshears and Penchion.

In April 2014, Boshears filed suit against Brooks in the Trial Court for negligence. Boshears sought recovery for injuries he allegedly sustained in the accident. Brooks filed an answer in opposition, in which he did not allege any comparative fault. The matter was tried before a jury in May 2015.

Brooks was 78 years old on the day of the accident. Brooks had been blind in his left eye since childhood. He also suffered from hearing loss. On the day of the accident, Brooks had driven himself to see his eye doctor to report blurry vision. Brooks' eye doctor referred him to the emergency room. Brooks proceeded to the emergency room. The accident occurred shortly after Brooks was discharged from the emergency room. Brooks testified that he went unconscious while driving and woke up in an ambulance. Brooks was transported to UT Medical Center following the accident.

It was Brooks' defense that he had a stroke which resulted in an unforeseeable loss of consciousness leading to the accident. Testimony was elicited regarding the state Brooks was in immediately after the accident. Two police officers who observed Brooks immediately following the accident testified. One officer said Brooks appeared "out of it," and the other stated Brooks appeared "shaken." Penchion stated that Brooks looked all right to her. Boshears testified that he saw Brooks clutching his chest and staring at the steering wheel. Boshears stated that Brooks had his turn signal activated. Penchion could not recall whether Brooks' turn signal was on or off.

Brooks offered the deposition testimony of Dr. Elzbieta E. Gornisiewicz, a neurologist who first saw Brooks in May 2013. In response to a hypothetical question, Dr. Gornisiewicz opined that Brooks had suffered a stroke and gone unconscious right before the accident. Dr. Gornisiewicz testified that a CT scan taken of Brooks on the day of the accident, but before the accident, was negative for ischemic activity indicating a stroke. However, a CT scan taken on the day of the accident, but after the accident, was positive for findings consistent with a stroke.

Boshears, for his part, sought to impeach Brooks' credibility by eliciting testimony on cross-examination tending to show that Brooks had suffered vision problems for years, and that, essentially, he had no business driving on the day of the accident. Boshears also attempted to cast doubt on whether Brooks had been unconscious during the accident, or, whether Brooks even had suffered a stroke at all.

The Trial Court instructed the jury as follows, in relevant part:

A person who is faced with a sudden or unexpected emergency that calls for immediate action is not expected to use the same accuracy of judgment as a person acting under normal circumstances who has time to think and reflect before acting. A person faced with a sudden emergency is required to act as a reasonably careful person placed in a similar position. A sudden emergency will not excuse the actions of a person whose own negligence created the emergency.

If you find there was a sudden emergency that was not caused by any fault of the person whose actions you are judging, you must consider this factor in determining and comparing fault.

A sudden loss of consciousness or physical incapacity experienced while driving which is not reasonably foreseeable is a defense to a negligent action. One who is ill or incapacitated at times may be negligently driving at all when he or she is aware that the sudden incapacitation could likely occur at any moment. To constitute a defense, the defendant must establish that the sudden loss of consciousness or physical capacity to control the vehicle was not reasonably foreseeable to a prudent person. As a result, the defense is not available under circumstances in which defendant was made aware of facts sufficient to lead a reasonably prudent person to anticipate that driving in that condition would likely result in an accident.

The following is a nonexclusive list of factors that you may rely upon to determine whether loss of consciousness was foreseeable. Number one, the extent of the driver's awareness and knowledge of the condition that caused the sudden incapacity. Number two, whether the driver had sought medical advice or was under a physician's care for a condition when the accident occurred. Number three, when the driver had been prescribed and was taking medication for a condition. Number four, when a sudden

incapacity had previously occurred while driving. Number five, the frequency, extent, duration of incapacity episodes prior to the accident while driving and otherwise. Number six, the temporal relationship with the prior incapacitating episodes to the accident. Number seven, a physician's guide or advice regarding driving, if any. Number eight, medical opinions regarding the nature of the driver's condition and adherence to treatment, the foreseeability of the incapacitation, and potential advance warnings that the driver would have experienced immediately prior to the incident.

The jury determined that Brooks was not at fault for the accident. Boshears filed a motion for a new trial, alleging, among other things, error in the Trial Court's charging the jury with both the sudden emergency doctrine and loss of consciousness. The Trial Court denied Boshears' motion for a new trial and affirmed the jury verdict. Boshears filed an appeal to this Court.

## Discussion

Although not stated exactly as such, Boshears raises the following two issues on appeal: 1) whether the Trial Court erred in charging the jury with Tennessee Pattern Jury Instruction 3.08, Sudden Emergency, when Brooks did not raise comparative fault; and, 2) whether the Trial Court erred in charging the jury with both sudden emergency and loss of consciousness.

We first address whether the Trial Court erred in charging the jury with Tennessee Pattern Jury Instruction 3.08, Sudden Emergency, when Brooks did not raise comparative fault. Our Supreme Court explained the sudden emergency doctrine in *McCall v. Wilder*, 913 S.W.2d 150 (Tenn. 1995) as follows:

The sudden emergency doctrine, which has now been subsumed into Tennessee's comparative fault scheme, *Eaton v. McLain*, 891 S.W.2d 587, 592 (Tenn. 1995), recognizes that a person confronted with a sudden or unexpected emergency which calls for immediate action is not expected to exercise the same accuracy of judgment as one acting under normal circumstances who has time for reflection and thought before acting. *See Young v. Clark*, 814 P.2d 364, 365 (Colo.1991); *see also Prosser and Keeton on the Law of Torts*, § 196.[1]

---

[1] "[T]he basis of the rule is merely that the actor is left no time for adequate thought, or is reasonably so disturbed or excited that the actor cannot weigh alternative courses of action, and must make a speedy decision, based very largely upon impulse or guess. Under such circumstances, the actor cannot reasonably be held to the same accuracy of judgment or conduct as one who has had the full opportunity

The doctrine no longer constitutes a defense as a matter of law but, if at issue, must be considered as a factor in the total comparative fault analysis. Accordingly, the doctrine of sudden emergency does not negate defendant's liability in the case before us as a matter of law.

*McCall*, 913 S.W.2d at 157 (footnote in the original).

This Court had the opportunity to discuss the applicability of the sudden emergency doctrine in *Ross v. Vanderbilt University Medical Center*, 27 S.W.3d 523 (Tenn. Ct. App. 2000). In *Ross*, the plaintiff went to the emergency room because of a cut on her finger. The emergency room physician, Dr. Morgan, injected the plaintiff's finger with Lidocaine in order to numb it. Then:

Almost immediately thereafter, Plaintiff, who was lying on a gurney, complained that she felt ill and her arm jerked up and her eyes rolled back in her head. Dr. Morgan testified that she walked about four feet across the room toward the door, yelled for help, and then returned at which point Plaintiff's body began to jerk. Dr. Morgan put her body over Plaintiff's body. Despite Dr. Morgan's actions, Plaintiff fell off the gurney on which she lay and onto the floor head first. Dr. Morgan remembered it taking only a couple of seconds before other medical staff arrived too late to help her keep Plaintiff from falling....

Dr. Wright subsequently diagnosed Plaintiff as having suffered from a vasovagal reaction which occurs when a person's blood pressure abruptly lowers. Vasovagal reactions are often accompanied by a fainting episode and can, if a person faints, be accompanied by jerking movements that resemble seizures.... He stated that, though he saw a lot of hospital patients and visitors grow faint, a fainting episode is "really uncommon" for someone who is lying on a stretcher. Moreover, only ten to thirty percent of those that faint during a vasovagal reaction also experience convulsions.

Following her fall in Defendant's emergency room, Plaintiff experienced changes in personality and problems with her memory and dexterity. She was eventually diagnosed with a traumatic brain injury as a result of her fall in the emergency room.

---

to reflect, even though it later appears that the actor made the wrong decision, one which no reasonable person could possible [sic] have made after due deliberation." *Prosser and Keeton on the Law of Torts*, § 196.

*Ross*, 27 S.W.3d at 525. In discussing the sudden emergency doctrine, this Court rejected the plaintiff's argument that sudden emergency has no application when a defendant does not allege comparative fault on the part of the plaintiff. *Id*., at 527-528; *see also Olinger v. Univ. Med. Ctr.*, 269 S.W.3d 560 (Tenn. Ct. App. 2008).

The case of *White v. Premier Medical Group*, 254 S.W.3d 411 (Tenn. Ct. App. 2007) involved the propriety of a jury instruction in a medical malpractice case. In *White*, the defendants successfully sought to have the jury charged on the defense of superseding cause. *Id*., at 415. Following a jury verdict in favor of the defendants, the plaintiffs claimed on appeal that the trial court erred in giving that particular instruction. We ultimately concluded that the jury instruction was appropriate. In so doing we discussed the requisite amount of proof needed to support a jury instruction and the applicable standard of review. We stated:

> It is proper for a court to charge the law upon an issue of fact within the scope of the pleadings upon which there is evidence, which even though slight, is "sufficient to sustain a verdict*." Reynolds v. Ozark Motor Lines, Inc.*, 887 S.W.2d 822, 823 (Tenn. 1994); *Norman v. Fisher Marine, Inc.*, 672 S.W.2d 414, 421 (Tenn. Ct. App. 1984); *Ringer v. Godfrey*, 362 S.W.2d 825, 827 (Tenn. Ct. App. 1962); *Monday v. Millsaps*, 264 S.W.2d 6 (Tenn. Ct. App. 1953); *Hurt v. Coyne Cylinder Co.*, 956 F.2d 1319, 1326 (6th Cir. 1992). For the evidence to be "sufficient to sustain a verdict," there must be evidence which is "material" to the issue. *Turner v. Jordan*, 957 S.W.2d 815, 824 (Tenn. 1997); *Crabtree Masonry Co. v. C & R Constr., Inc.*, 575 S.W.2d 4, 5 (Tenn. 1978); *City of Chattanooga v. Rogers*, 299 S.W.2d 660 (Tenn. 1956); *D.M. Rose & Co. v. Snyder*, 206 S.W.2d 897 (Tenn. 1947).

> The Tennessee Supreme Court has described "material evidence" as "evidence material to the question in controversy, which must necessarily enter into the consideration of the controversy and by itself, or in connection with the other evidence, be determinative of the case." *Knoxville Traction Co. v. Brown*, 89 S.W. 319, 321 (Tenn. 1905); *Fuller v. Tennessee-Carolina Transp. Co.*, 471 S.W.2d 953, 956 (Tenn. Ct. App. 1970). Black's Law Dictionary defines "material evidence" as "evidence having some logical connection with the consequential facts or the issues." Black's Law Dictionary 459 (7th ed. 2000); *see Smith v. Tennessee Furniture Indus., Inc.*, 369 S.W.2d 721, 728 (Tenn. 1963). This Court has described "material evidence" to be "such relevant evidence as a reasonable mind might accept as adequate to support a rational conclusion and such as

to furnish a reasonably sound basis for the action under consideration." *Sexton v. Anderson County*, 587 S.W.2d 663, 666 (Tenn. Ct. App. 1979)….

When determining whether there is material evidence sufficient to sustain a verdict, the appellate courts "do not determine the credibility of witnesses or weigh evidence on appeal from a jury verdict." *Reynolds*, 887 S.W.2d at 823. Instead, the appellate courts "are limited to determining whether there is material evidence to support the jury's verdict." *Id.* If we determine the record contains material evidence supporting the verdict, we are not to disturb the verdict. *Id.*

Accordingly, without judging the credibility of witnesses or weighing the evidence, we must determine whether there is any material evidence sufficient to sustain the defense of superseding cause. To make this determination, we must identify the superseding cause contended by Defendants and determine whether there is any material evidence in the record that pertains to each element of this defense.

*White*, 254 S.W.3d at 416-17 (footnote omitted). We also note that "[w]e should not set aside a jury's verdict because of an erroneous instruction unless it affirmatively appears that the erroneous instruction actually misled the jury." *Grandstaff v. Hawks*, 36 S.W.3d 482, 497 (Tenn. Ct. App. 2000).

Our review of the case precedent leads us to conclude that it was not necessary for Brooks to plead the affirmative defense of comparative fault in order for the Trial Court to charge the jury on sudden emergency. *McCall* never stated that sudden emergency has no application outside of cases where comparative fault is alleged. The adoption of Boshears' position would lead to illogical and unacceptable results. For example, assume a case in which the "sudden emergency" without question is not caused by any individual. An example of this would be a seemingly healthy tree falling across the road causing the soon to be defendant driver to swerve suddenly into the path of the soon to be plaintiff driver. The defendant would have no basis to claim comparative fault of the plaintiff or anyone else, but there could be no doubt that there was indeed a "sudden emergency" that confronted the defendant driver. The adoption of Boshears' position would mean that even in such a case of undeniable sudden emergency, the trier of fact could not consider sudden emergency because the defendant could not and did not allege comparative fault. *McCall* held that sudden emergency, if applicable, is simply one of many factors to be considered by the trier of fact in determining fault. We decline to depart from our longstanding case law interpreting *McCall*. We find no error in the Trial Court's charging the jury with sudden emergency even though Brooks did not raise comparative fault as an affirmative defense.

We next address whether the Trial Court erred in charging the jury with both sudden emergency and loss of consciousness. In *McCall*, our Supreme Court stated:

> The key to establishing the physical capacity or loss of consciousness defense is foreseeability. Consequently, the defense would be inappropriate if the driver was aware of facts sufficient to cause a reasonably prudent person to anticipate that his or her driving might likely lead to an accident.
>
> ***
>
> In determining whether the loss of capacity or consciousness was foreseeable, pertinent, nonexclusive considerations would include: the extent of the driver's awareness or knowledge of the condition that caused the sudden incapacity; whether the driver had sought medical advice or was under a physician's care for the condition when the accident occurred; whether the driver had been prescribed, and had taken, medication for the condition; whether a sudden incapacity had previously occurred while driving; the number, frequency, extent, and duration of incapacitating episodes prior to the accident while driving and otherwise; the temporal relationship of the prior incapacitating episodes to the accident; a physician's guidance or advice regarding driving to the driver, if any; and medical opinions regarding the nature of the driver's condition, adherence to treatment, foreseeability of the incapacitation, and potential advance warnings which the driver would have experienced immediately prior to the accident. These factors, and any other relevant ones under the circumstances, would tend to establish whether the duty to exercise reasonable care was breached.

*McCall*, 913 S.W.2d at 155-56.

Boshears argues on appeal that the Trial Court erred in charging the jury on both sudden emergency and loss of consciousness. According to Boshears, this effectively gave Brooks two bites of the apple, so to speak. Most critically, per Boshears, is that sudden loss of consciousness contains an element of foreseeability that sudden emergency does not. In other words, Boshears contends that because both instructions were given jurors merely needed to conclude that the sudden emergency arose, and Brooks, therefore, was absolved of negligence.

Initially, we disagree with Boshears' characterization of sudden emergency as charged by the Trial Court, quoted above. The doctrine of sudden emergency does have provision for fault or negligence on the part of the individual whose conduct is at issue. The Trial Court stated in its instruction given to the jury: "A sudden emergency will not excuse the actions of a person whose own negligence created the emergency." It is not as though a sudden emergency renders an individual's otherwise tortious conduct appropriate. Rather, it is but one consideration that the jury is to take into account.

Second, this case as presented to the jury contained multiple theories. Brooks posits the theory that he was rendered unconscious by a stroke, an unforeseeable event, and he cannot be found at fault for the accident. Boshears on the other hand advanced a theory at trial that Brooks was conscious and struck Boshears because of vision problems that were highly foreseeable based upon Brooks' history of vision problems. Boshears also questioned whether Brooks' stroke occurred before the accident, or, indeed, whether he had a stroke at all. The sudden loss of consciousness doctrine fits the case theory set forth by Brooks to the jury. The case theory set forth by Boshears did not accept a loss of consciousness event but instead raised with the jury the theory that the accident was caused by Brooks' visual problems which may or may not have had a sudden onset, or, if Brooks had a stroke, he had warning signs. In short, there was evidence presented by the parties sufficient to sustain a verdict on this issue of fact, and giving the instruction on sudden emergency, therefore, was not error. We, therefore, find no error in the Trial Court's charging the jury on both sudden emergency and loss of consciousness.

Additionally, the record before us on appeal does not reveal to us which theory the jury ultimately believed to be true. Boshears points to no specific evidence in the record that the jury was in any way actually misled by the jury instructions. The jury simply found Brooks to be not at fault. Even if we were to conclude that the Trial Court erred in charging both sudden emergency and loss of consciousness, we would be unable to conclude that such error impacted the outcome of the trial, and such error, therefore, would be harmless. We affirm the judgment of the Trial Court.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellant, James Boshears, and his surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE

-9-