LORRAINE SAWASH & another[1] *vs.* SUBURBAN WELDERS
SUPPLY COMPANY, INC., & another.[2]

Middlesex. January 9, 1990. - May 9, 1990.

Present: ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Hazardous Materials. Constitutional Law,* Federal preemption. *Statute,*
Federal preemption. *Administrative Law,* Regulations.

Neither the Hazardous Materials Transportation Act, 49 U.S.C. §§ 1801-
1813 (1982 & Supp. III 1985), providing for the safe transportation of
hazardous materials in commerce, nor 49 C.F.R. § 173.315 (1989), re-
quiring the odorization of compressed gas offered for transportation in a
cargo or portable tank, preempted a tort action by certain consumers,
who had been severely burned as the result of the explosion of a cata-
lytic heater fueled by propane gas inside a tent in which they had been
sleeping, which raised the issue of the appropriate odorization of pro-
pane gas for consumer use.[314-318]

CIVIL ACTION commenced in the Superior Court Depart-
ment on May 29, 1985.

Motions for summary judgment were heard by *Joseph S.
Mitchell, Jr.,* J.

The Supreme Judicial Court granted a request for direct
appellate review.

*Edward M. Swartz* (*Alan L. Cantor* with him) for the
plaintiffs.

*Robert P. Powers* (*Jeffrey C. Melick & Joseph P.
Musacchio* with him) for Country Gas Distributors, Inc.

*Diane Swierczynski & Lesa M. Stramondo* for Suburban
Welders Supply Co., Inc.

O'CONNOR, J. This is the plaintiffs' appeal from the allow-
ance of the defendants' motions for summary judgment and

---

[1]Raymond Sawash.
[2]Country Gas Distributors, Inc.

the entry of judgment dismissing the plaintiffs' complaint. We granted the parties' joint application for direct appellate review. We reverse the judgment and remand to the Superior Court.

The plaintiffs were severely burned as the result of an explosion and fire inside a tent in which they had been sleeping. The explosion and fire occurred when the plaintiffs awoke and turned off a catalytic heater that had been heating their tent and was fueled by propane gas, also known as liquefied petroleum (or l.p.) gas. The plaintiffs say that at no time before or after the fire did they smell gas.

The plaintiffs' complaint alleges that the defendants distributed and sold the propane; that the propane was dangerously defective; and that it was unaccompanied by an adequate warning of its dangerousness. The complaint sounded in negligence and breach of express and implied warranties.

The defendant Country Gas Distributors, Inc. (Country Gas), moved for summary judgment on the stated ground that "discovery had demonstrated that Country Gas fully complied with all applicable state and federal regulations regarding odorization of the gas involved. Such compliance demonstrates that plaintiffs' complaint is without foundation and precludes imposition of tort liability." The defendant Suburban Welders Supply Company, Inc. (Suburban), followed suit with a similar motion. Materials submitted in support of the motions established that the gist of the plaintiffs' claims was that the propane, which is naturally odorless, had been supplied by Country Gas to Suburban and sold to the plaintiff Raymond Sawash's brother without having been adequately odorized and without sufficient warning. The materials also established that the propane complied with a regulation issued by the Secretary of Transportation. 49 C.F.R. § 173.315 (1989). A judge of the Superior Court allowed the motions for summary judgment without explanation, but we assume, as the parties also appear to assume, that the judge decided that the plaintiffs' product liability action is preempted by the Hazardous Materials Transportation Act

(HMTA), 49 U.S.C. §§ 1801-1813 (1982 & Supp. III 1985), and 49 C.F.R. § 173.315.

We set forth several relevant portions of the HMTA and 49 C.F.R. § 173.315. Section 1801 of the HMTA provides: "It is declared to be the policy of Congress in this chapter [Chapter 27 entitled "Hazardous Materials Transportation"] to improve the regulatory and enforcement authority of the Secretary of Transportation to protect the Nation adequately against the risks to life and property which are inherent in the transportation of hazardous materials in commerce." In § 1802 (6), the term "transports" or "transportation" is defined to mean "any movement of property by any mode, and any loading, unloading, or storage incidental thereto." Section 1803 states that, "[u]pon a finding by the Secretary, in his discretion, that the transportation of a particular quantity and form of material in commerce may pose an unreasonable risk to health and safety or property, he shall designate such quantity and form of material or group or class of such materials as a hazardous material. . . ." Under § 1804 of the HMTA, the Secretary of Transportation may issue "regulations for the safe transportation in commerce of hazardous materials. Such regulations shall be applicable to any person who transports, or causes to be transported or shipped, a hazardous material, or who manufactures, fabricates, marks, maintains, reconditions, repairs, or tests a package or container which is represented, marked, certified, or sold by such person for use in the transportation in commerce of certain hazardous materials. Such regulations may govern any safety aspect of the transportation of hazardous materials . . . ."

We refer to one other section of the statute. Section 1811 (a) provides that "[e]xcept as provided in subsection (b) of this section [subsection (b) is irrelevant to the present case], any requirement, of a State or political subdivision thereof, which is inconsistent with any requirement set forth in this chapter, or in a regulation issued under this chapter, is preempted."

The Secretary of Transportation issued an odorization regulation, § 173.315, entitled, "Compressed gases in cargo tanks and portable tanks." The regulation provides in part:

"(a) A compressed gas offered for transportation in a cargo tank or a portable tank must be prepared in accordance with this section . . . .

". . .

"(b) . . .

"(1) *Odorization.* All liquefied petroleum gas shall be effectively odorized as required in Note 2 of this paragraph to indicate positively, by a distinctive odor, the presence of gas down to a concentration in air of not over one-fifth the lower limit of combustibility: *Provided, however,* That odorization is not required if harmful in the use or further processing of the liquefied petroleum gas, or if odorization will serve no useful purpose as a warning agent in such use or further processing.

". . .

"NOTE 2: The use of 1.0 pound of ethyl mercaptan, 1.0 pound of thiophane, or 1.4 pounds of amyl mercaptan per 10,000 gallons of liquefied petroleum gas shall be considered sufficient to meet the requirements of § 173.315(b)(1). . . ." 49 C.F.R. § 173.315 (1989).

"Federal law may pre-empt state law in any of three ways. First, in enacting the federal law, Congress may explicitly define the extent to which it intends to pre-empt state law . . . . Second, even in the absence of express pre-emptive language, Congress may indicate an intent to occupy an entire field of regulation, in which case the States must leave all regulatory activity in that area to the Federal Government . . . . Finally, if Congress has not displaced state regulation entirely, it may nonetheless pre-empt state law to the extent that the state law actually conflicts with federal law. Such a conflict arises when compliance with both state and federal law is impossible, . . . or when the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " (Citations omitted.) *Michigan Canners & Freezers Ass'n* v. *Agricultural Mktg.*

*& Bargaining Bd.*, 467 U.S. 461, 469 (1984), quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941). See *Attorney Gen. v. Brown*, 400 Mass. 826, 828-829 (1987). Federal regulations, when consistent with the underlying statute, constitute a type of Federal law that can be preemptive. *Fidelity Fed. Sav. & Loan Ass'n* v. *De La Cuesta*, 458 U.S. 141, 153 (1982).

"Preemption . . . is not favored, and State laws should be upheld unless a conflict with Federal law is clear." *Attorney Gen.* v. *Travelers Ins. Co.*, 385 Mass. 598, 602 (1982), vacated, 463 U.S. 1221 (1983), reaff'd, 391 Mass. 730 (1984), aff'd sub nom. *Metropolitan Life Ins. Co.* v. *Massachusetts*, 471 U.S. 724 (1985). "The burden is on the party seeking to displace the State action to show preemption with hard evidence of conflict based on the record." *Commonwealth Elec. Co.* v. *Department of Pub. Utils.*, 397 Mass. 361, 376 (1986), cert. denied, 481 U.S. 1036 (1987). "State law is not preempted merely by reference to some vaguely defined Federal policy, or on the ground that Congress has enacted a statute which is tangentially relevant to the subject at issue." *Arthur D. Little, Inc.* v. *Commissioner of Health & Hosps. of Cambridge*, 395 Mass. 535, 545 (1985). We assume, without deciding, in favor of the defendants and contrary to the plaintiffs' argument, that a tort action has the same regulatory effect as a State law and therefore that it can be preempted in the same manner and to the same degree as a State law. See *Wood* v. *General Motors Corp.*, 865 F.2d 395, 410-412 (1st Cir. 1988), cert. denied, 110 S.Ct. 1781 (1990).[3]

We turn our attention to the question whether Congress has indicated an intention that the HMTA should preempt State law in any of the three ways described in *Michigan Canners & Freezers Ass'n* v. *Agricultural Mktg. & Bargaining Bd., supra.* The HMTA, unlike many Federal statutes, expressly defines the extent of its preemptive effect in § 1811, entitled "Relationship to other laws," and set forth above.

---

[3]References to State law in this opinion, therefore, include State tort actions.

The provision in § 1811 that only those State requirements that are "inconsistent" with the HMTA or related regulations are preempted makes clear that Congress has not adopted the second mode of preemption set forth in the *Michigan Canners* case. That is, Congress has made clear that it has no intention of preempting the entire field of regulating every aspect of commerce in propane and other compressed gases. See Hazardous Materials; Inconsistency Rulings, 49 Fed. Reg. 46,632 (1984).

Furthermore, the language of § 1811 to the effect that only "inconsistent" State requirements are preempted has been interpreted by the Department of Transportation to mean that only State law that actually conflicts (in the sense discussed below) with the HMTA or a related regulation is preempted. 49 C.F.R. § 107.209(c) (1989). *Jersey Cent. Power & Light Co.* v. *Lacey*, 772 F.2d 1103, 1113 (3d Cir. 1985), cert. denied, 475 U.S. 1013 (1986). *National Tank Truck Carriers, Inc.* v. *Burke*, 535 F. Supp. 509, 515 (D.R.I. 1982), aff'd, 698 F.2d 559 (1st Cir. 1983). Thus, the first and third ways of defining the extent of preemption set forth in *Michigan Canners*, *supra*, in the context of this case are the same, and the question to be decided is whether there is an actual conflict.

An actual conflict between a State law and a Federal law can be shown in two ways, either of which will support a conclusion that the State law is preempted by the Federal one. First, an actual conflict exists if compliance with both laws is physically impossible. See *Florida Lime & Avocado Growers, Inc.* v. *Paul*, 373 U.S. 132, 142-143 (1963). That situation is not present here. The plaintiffs' action raises the issue of the appropriate odorization of propane gas for consumer use, whereas the HMTA and the related regulations address the odorization necessary for safe transportation of that gas. It would not be physically impossible for the suppliers of propane to comply with 49 C.F.R. § 173.315 (1989), and also to comply with a higher State requirement that might be established in this tort action.

An actual conflict can also be shown when the State law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Michigan Canners*, *supra* at 469, quoting *Hines* v. *Davidowitz*, *supra*. In the case of the HMTA, as its several provisions quoted earlier in this opinion demonstrate, Congress has made its objectives and purposes clear in the text of the statute itself. Moreover, the legislative history confirms what the statute expressly provides: that the congressional objective in enacting the HMTA was to promote the safe transportation of hazardous materials and thereby minimize the number and extent of accidents involving carriers of hazardous materials. H.R. Rep. No. 1083, 93d Cong., 2d Sess. 2156, reprinted in 1974 U.S. Code Cong. & Admin. News 7669. See *Williams* v. *Hill Mfg. Co.*, 489 F. Supp. 20, 23 (D.S.C. 1980). The Secretary of Transportation is instructed in the statute to issue regulations for the "safe transportation in commerce of hazardous materials." 49 U.S.C. § 1804. The defendants are undoubtedly correct in their assertion that uniformity of regulation was a subsidiary congressional goal, but this uniformity was only intended for regulations promulgated in the area of hazardous materials transportation. Hazardous Materials; Inconsistency Ruling, 49 Fed. Reg. 46,632, 46,633 (1984).

A civil action involving a consumer's end use of a hazardous material is so far removed from the danger sought to be averted by the HMTA that it cannot properly be said that such an action or a resulting judgment would interfere with the objectives of Congress. "Nowhere in [the HMTA] nor in its legislative history is there any mention of concern for post-transportation danger or injuries . . . ." *Williams* v. *Hill Mfg. Co.*, *supra*. Furthermore, the purpose served by the plaintiffs' tort action, compensating those who have been injured, has traditionally been within the scope of State interest. *Taylor* v. *General Motors Corp.*, 875 F.2d 816, 823 (11th Cir. 1989), cert. denied, 110 S.Ct. 1781 (1990). *Ferebee* v. *Chevron Chem. Co.*, 736 F.2d 1529, 1542 (D.C. Cir.), cert. denied, 469 U.S. 1062 (1984). We perceive no overlap between the HMTA and the plaintiffs' action be-

cause the HMTA does not even attempt to regulate consumer end use of hazardous materials. See *Florida Lime & Avocado Growers, Inc., supra* at 145 ("Congressional regulation of one end of the stream of commerce does not, *ipso facto*, oust all state regulation at the other end."). We conclude, therefore, that neither the HMTA nor the odorization regulation, 49 C.F.R. § 173.315 (1989), preempts this action. We vacate the order allowing the defendants' motions for summary judgment, we reverse the judgment of dismissal, and we remand the case to the Superior Court for further proceedings.[4]

*So ordered.*

---

[4]The defendant Suburban argues in its brief that, even if the plaintiffs' claims are not preempted, Suburban is entitled to summary judgment on the plaintiffs' failure to warn claim because, as demonstrated by their testimony in depositions submitted in a supplementary appendix, the plaintiffs never looked at the propane container for warnings. If the plaintiffs did not look for warnings, Suburban argues, a failure to warn could not be found to have caused the plaintiffs' injuries. It is apparent that Suburban's causation argument is made for the first time on appeal. Accordingly, although causation may be contested at trial, we do not consider it on appeal.