956 F.2d 1319
 35 Fed. R. Evid. Serv. 140, Prod.Liab.Rep. (CCH) P 13,073
David HURT and wife, Beth Hurt, Plaintiffs-Appellants, Cross-Appellees,
Auto-Owners Insurance Company, Intervening
Plaintiff-Appellee (90-6275),
v.
COYNE CYLINDER COMPANY, Defendant-Appellee (90-6094),
Liquid Air Corporation, Defendant-Appellee, Cross-Appellant.
 Nos. 90-6094, 90-6275.
 United States Court of Appeals,
Sixth Circuit.
 Argued Sept. 17, 1991.
Decided Feb. 18, 1992.
Rehearing Denied March 31, 1992.
 
 T. Robert Hill (argued and briefed), Hill, Boren, Drew & Martindale, Jackson, Tenn., Ralph E. Chapman, Dana J. Swan, Chapman, Lewis & Swan, Clarksdale, Miss., for David and Beth Hurt.
 Marikaye C. Thurmond, Neely, Green, Fargarson & Brooke, Gail O. Mathes, Bogatin, Lawson & Chiapella, Memphis, Tenn., Craig A. Newman, Caruthers, Herzog, Crebs & McGhee, St. Louis, Mo., Robert L. Green (argued and briefed), Neely, Green, Fargarson & Brooke, Memphis, Tenn., for Coyne Cylinder Co.
 David E. Harrison (briefed), Shelby R. Grubbs (argued), Grant, Konvalinka & Grubbs, Chattanooga, Tenn., for Liquid Air Corp.
 Before GUY and BOGGS, Circuit Judges, and HARVEY, Senior District Judge.*
 BOGGS, Circuit Judge.
 
 
 1
 David Hurt, Jr. and his wife, Beth Hurt, appeal a jury verdict for defendants Coyne Cylinder Company ("Coyne") and Liquid Air Corporation ("Liquid Air") in a design defect products liability case arising out of burns sustained by Hurt in the explosion of an acetylene cylinder. Hurt seeks reversal and remand for retrial on the grounds that the trial judge committed reversible error by 1) refusing to instruct the jury on the availability of alternative safety devices; 2) excluding a videotape from evidence; 3) denying plaintiff's motion to strike jury instructions on affirmative defenses; and 4) holding that Department of Transportation ("DOT") Regulations on Hazardous Materials, 49 C.F.R. § 179 et seq., create a presumption that the product is not unreasonably dangerous under Tennessee Code Annotated Section 29-28-104. We find reversible error on two grounds and remand for retrial.
 
 
 2
 Co-defendant Liquid Air cross appeals, claiming that the district court erred in denying its motion for a directed verdict on grounds of adequacy of warning. We reverse and direct the district court to grant Liquid Air's motion.
 
 
 3
 * On August 30, 1985, David Hurt, Jr. was engulfed by flames from the explosion of an acetylene cylinder, resulting in burns to more than 70% of his body. The explosion occurred at the Hurt Seed Company after Hurt's son, Trey, had been using a mobile acetylene unit mounted on the back of an old pickup truck that was used solely for the service and maintenance of company property. The acetylene unit had only been used a few times previously and had about 50-75 feet of oxygen and acetylene hose coiled around a hook, resting alongside the cylinder. Despite all the extra hose, Trey began a small cutting job on a piece of pipe only a few feet from the back of the pickup truck. A few minutes later, he heard a swishing sound and saw that the acetylene unit was on fire. Trey dropped his torch, ran inside to get a fire extinguisher and returned with another employee but failed to put out the fire. They then ran back inside to get more extinguishers. Meanwhile, Hurt, seeing flames shooting from the back of the truck, came running out of his office with another fire extinguisher, thinking that his son might be on fire. When he realized that Trey was not in danger, Hurt nonetheless still tried to put out the fire. He quickly realized that the fire was inside the acetylene cylinder and started to run away. However, it was then too late and he was engulfed in flame as the acetylene cylinder exploded. The oxygen cylinder did not explode, nor did any other part of the truck. The explosion resulted in Hurt having disfiguring burns that required 164 days of hospitalization and cost $467,356.80 in medical expenses.
 
 
 4
 The acetylene cylinder was designed, manufactured, tested, and sold by Coyne, owned by Mid-South Oxygen Company in Memphis, and shipped directly by Coyne to Liquid Air, which then filled the cylinder with acetylene in August 1984. The cylinder was delivered to the Hurt Seed Company on April 24, 1985, and simultaneously exchanged for an empty, used cylinder as was customary. Liquid Air had placed a flammability warning label on the acetylene cylinder. The label included the word "FLAMMABLE" in very large type, set off by a distinctive red diamond surrounding it. It also included the legend (with the first word printed in red): "DANGER: FLAMMABLE GAS. MAY FORM EXPLOSIVE MIXTURE WITH AIR. ... KEEP AWAY FROM HEAT, FLAME AND SPARKS."
 
 
 5
 Hurt maintains the fire was caused by design defects in the acetylene cylinder and that Liquid Air provided inadequate labels warning of the product's danger for consumer use. Appellees claim that the explosion occurred as a result of extreme external heat from the fire raging in and around the faulty hoses, which impinged on the cylinder and caused the steel to weaken and rupture. The jury returned a verdict for defendants. Hurt's motion for a new trial was denied and both Hurt and Liquid Air now appeal.
 
 II
 
 6
 * In order for acetylene cylinders to be transported and enter the flow of commerce, they must comply with Department of Transportation ("DOT") Regulations on Hazardous Materials, 49 C.F.R. § 179 et seq. The parties do not dispute that the appellees complied with the DOT regulations. However, Hurt claims that the trial judge committed reversible error by instructing the jury that appellees' compliance with the DOT regulations established a rebuttable presumption that the acetylene unit was not unreasonably unsafe for consumer use.
 
 
 7
 The instruction was based on T.C.A. § 29-28-104, which states:
 
 
 8
 Compliance by a manufacturer or seller with any federal or state statute or administrative regulation existing at the time a product was manufactured and prescribing standards for design, inspection, testing, manufacture, labeling, warning or instructions for use of a product, shall raise a rebuttable presumption that the product is not in an unreasonably dangerous condition in regard to matters covered by these standards.
 
 
 9
 Based on this statute, the judge ruled that Coyne's compliance with DOT regulations established a presumption that the cylinder was not unreasonably safe. Both at trial and on appeal, Hurt argues that these regulations only deal with transportation and have nothing to do with consumer usage and that compliance with transportation regulations does not create a presumption of safety with regard to consumer use.
 
 
 10
 Whether the judge should have instructed the jury on this issue depends on statutory interpretation. The presumption created by T.C.A. § 29-28-104 is limited "to matter covered by these standards." Appellees argue that this section establishes that a manufacturer of a product is entitled to a rebuttable presumption if it complies with any state or federal statute. They claim that because the DOT regulations contain comprehensive and exclusive standards for the manufacture, inspection, testing, and marking of acetylene cylinders, e.g., 49 C.F.R. § 173.34, they therefore are meant to apply to consumer use. For example, the DOT regulations include a section entitled "General Qualifications for Use of Cylinders," 49 C.F.R. § 173.34(a). In addition, they are the only federal regulations that exist with regard to acetylene cylinders. See 49 C.F.R. §§ 178 et seq. The only other material concerning acetylene cylinder safety is found in industry pamphlets.
 
 
 11
 However, these arguments are not persuasive. Section 173.34(a) is part of 49 C.F.R. § 173, which is entitled "Shippers--General Requirements for Shipments and Packagings." That section is limited to containers "intended for use in the transportation of hazardous materials." 49 C.F.R. § 173.1(a)(3). In fact, the statutory language and legislative history of the statute authorizing the DOT regulations limit their applicability to matters of transport and not consumer use. See Sawash v. Suburban Welders Supply Co., 407 Mass. 311, 316-17, 553 N.E.2d 894 (1990).
 
 
 12
 The DOT statute on hazardous material transportation states, in pertinent part, that "the policy of Congress in this chapter is to improve the regulatory and enforcement authority of the Secretary of Transportation to protect the Nation adequately against the risks to life and property which are inherent in the transportation of hazardous materials in commerce." 49 U.S.C.App. § 1801 (emphasis added). The Secretary is only authorized to issue regulations to "govern any safety aspect of the transportation of hazardous materials." 49 U.S.C.App. § 1804(a). The statute makes no mention of post-transportation requirements or prohibitions.
 
 
 13
 The general scope of the Hazardous Materials regulations is limited to the transportation of "hazardous materials which means a substance or material ... capable of posing an unreasonable risk to health, safety, and property when transported in commerce and which has been so designated." 49 C.F.R. § 171.8. The legislative history confirms the explicit limitations imposed by the text: that the purpose of the act was to prevent harm to persons from accidents while hazardous material is in transit. H.R.Rep. No. 1083, 93d Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Admin.News 7669, 7670. See Williams v. Hill Mfg. Co., 489 F.Supp. 20, 23 (D.S.C.1980); Sawash, 407 Mass. at 317, 553 N.E.2d 894.
 
 
 14
 The appellees counter that the regulations incorporate, by reference, various Compressed Gas Association ("CGA") pamphlets that provide industry specifications for acetylene cylinders. 49 C.F.R. § 171.7. They argue that by adopting industry standards, the regulations automatically extend, through the notion of "full" or "complete" incorporation, to the ultimate end users and handlers of the acetylene cylinders. However, the incorporation accomplished by the DOT regulations is still limited to issues of transportation, does not change the scope of the regulations, and therefore can not be addressed to the ultimate user. This statute on its face deals only with hazardous materials in transport.
 
 
 15
 No precedent contradicts our holding that T.C.A. § 29-28-104 does not create a presumption arising from the DOT regulations in relation to safety for customer usage. This circuit has applied T.C.A. § 29-28-104 in only two cases. See Goins v. Clorox Co., 926 F.2d 559 (6th Cir.1991), and Clarksville-Montgomery County School System v. United States Gypsum Co., 925 F.2d 993 (6th Cir.1991). In both cases, T.C.A. § 29-28-104 was found applicable, but both cases dealt with direct user-related regulations: warning labels and quality of construction for use. There was never a question in either of these cases over the applicability of the regulations to the issue at hand. Here, there is a basic question whether the consumer use of the cylinder is one of the "matters covered by these standards." The DOT regulations should not have been presented to the jury as creating a presumption that compliance with the regulations establishes that the product is not unreasonably dangerous for use pursuant to T.C.A. § 29-28-104 because customer use is not one of the "matters covered by these standards."
 
 
 16
 The trial judge's jury instruction is reversed and the case remanded for a new trial. On retrial, the jury should not be instructed as to any presumption of the safety of the acetylene unit for customer use based on compliance with DOT regulations for transportation.
 
 B
 
 17
 The next question before us is whether the trial judge improperly included certain affirmative defenses in his jury instructions. When considering the correctness and adequacy of a charge to the jury, we must review the jury instructions as a whole. Howard v. Chesapeake and Ohio Ry. Co., 812 F.2d 282, 287 (6th Cir.), cert. denied, 484 U.S. 820, 108 S.Ct. 78, 98 L.Ed.2d 40 (1987). But a substantial and prejudicial error in a single jury instruction may warrant reversal. Miller v. Utica Mill Specialty Machinery Co., 731 F.2d 305, 307 (6th Cir.1984). However, even where a portion of the charge is erroneous, if the point is explained and corrected in other parts of the charge so that the jury will not be misled, the jury's verdict should be affirmed. See Cincinnati Fluid Power, Inc. v. Rexnord, Inc., 797 F.2d 1386, 1391 (5th Cir.1986).
 
 
 18
 The trial judge gave the jury the following instructions on affirmative defenses:
 
 
 19
 Defendant Coyne further contends that plaintiff's son, Trey Hurt, misused the oxy-acetylene set-up which contributed to the ... start of the fire that allegedly caused the rupture. These acts of misuse by plaintiff's son, according to Coyne, of the oxy-acetylene equipment constitutes [sic] an independent intervening cause of the plaintiff's injuries....
 
 
 20
 Defendant Coyne contends that exposure of the acetylene cylinder to open flames from a leak or a crack in the hose constituted abnormal use of the cylinder. Such use of the cylinder was not foreseeable by Defendant Coyne.... Liquid Air also contends that the acetylene was being used unreasonably and improperly by Trey Hurt on or about August 30th, 1985, and that the improper use of the acetylene cylinder by Trey Hurt was a proximate cause of the fire and subsequent rupture of the cylinder and David Hurt Jr.'s resulting injuries.Liquid Air contends that David Hurt, Jr. acted unreasonably in attempting to extinguish the flames surrounding the acetylene cylinder and that David Hurt, Jr. was aware of the risk of approaching an acetylene cylinder surrounded by flames, but nevertheless voluntarily assumed the risk.... In order for the defendants to establish the affirmative defense of assumption of the risk, the defendants must prove ... first, that the plaintiff knew of the dangers of the defect or unreasonably dangerous condition presented; two, that plaintiff fully appreciate[d] the danger; and, three, that plaintiff nevertheless voluntarily and unreasonably exposed himself to that danger....
 
 
 21
 J.A. at 1002-10.
 
 
 22
 These jury instructions do not comply with Tennessee law concerning the necessity of nonforeseeability in affirmative defenses. Under Tennessee law, this is a strict liability case. See Ford Motor Co. v. Lonon, 217 Tenn. 400, 398 S.W.2d 240 (1966); Restatement (Second) of Torts, § 402A (1965). For policy reasons, it is well established that in strict liability tort cases, ordinary user negligence is no bar to manufacturer liability, as this would undermine the purpose behind strict liability--spreading costs and the risk of loss while encouraging manufacturers to make safer products. Ellithorpe v. Ford Motor Co., 503 S.W.2d 516, 520-21 (Tenn.1973).
 
 
 23
 Nonetheless, intervening cause, abnormal use and assumption of risk are allowable defenses in strict liability, but only if these actions were not reasonably foreseeable by the manufacturer. See Ellithorpe, 503 S.W.2d at 519-21 and Caldwell v. Ford Motor Co., 619 S.W.2d 534, 540 (Tenn.App.1981). The trial court failed to instruct adequately that the manufacturer must not have been able to foresee the consumer action constituting the defense.
 
 
 24
 The independent intervening cause defense requires that the defendant manufacturer prove by a preponderance of the evidence the intervening act of an agency which is 1) independent, 2) efficient, 3) conscious, and 4) not reasonably to have been anticipated. Ford Motor Co. v. Wagoner, 183 Tenn. 392, 192 S.W.2d 840 (1946). The jury instruction on intervening cause was explained as misuse and failed to mention foreseeability at all. The instruction actually adopts contributory negligence standards, and by leaving out the limiting factor of foreseeability left the jury free to speculate about what constituted independent intervening cause.
 
 
 25
 Similarly, abnormal use is an allowable defense in strict liability cases, but "use of the product will not bar recovery if it is reasonably foreseeable by the manufacturer." Ellithorpe, 503 S.W.2d at 519. The abnormal use jury instruction, while stating that defendant Coyne maintained that the plaintiff's use of the cylinder was not foreseeable, failed to explain adequately what foreseeability meant and how to judge this standard. Foreseeability is determined by "[t]he realities of the intended and actual use [of the product that] are well known to the manufacturer and the public and these realities should be squarely faced by the manufacturer and the courts." Id., at 520, quoting Larsen v. General Motors Corp., 391 F.2d 495 (8th Cir.1968).
 
 
 26
 Finally, while ordinary negligence is not a defense in strict liability, assumption of risk, or "voluntarily and unreasonably proceeding to encounter a known danger," is a defense. Ellithorpe, 503 S.W.2d at 521 (citations omitted). The specific elements that must exist for there to be assumption of risk are 1) knowledge of the danger; 2) appreciation of the danger; and 3) voluntary exposure to that danger. Rogers v. Garrett, 217 Tenn. 282, 397 S.W.2d 372, 374 (1965). Assumption of risk also requires the element of nonforeseeability, as Caldwell establishes the principle that if an action is a foreseeable, normal, intervening cause, it does not relieve a defendant of its responsibility. Caldwell, 619 S.W.2d at 539. In holding that it is foreseeable that one will make a rational attempt to rescue personal property in peril, Caldwell establishes that foreseeability is an element of the rescue doctrine. "If the attempt to rescue is rational in light of the facts and circumstances existing at the time, it is a foreseeable risk...." Id. at 540. Certainly, if it is deemed foreseeable and rational for one to try to rescue one's own personal property, it is even more foreseeable that a man will try to rescue his son, initially placing him in the zone of danger, and thereafter stay to save his property.
 
 
 27
 As to whether the judge properly issued the affirmative defense jury instructions in the first place, the rule is that "[t]o support a jury instruction there only needs to be some evidence in the record which would support a verdict on that instruction, even though slight." Norman v. Fisher Marine, Inc., 672 S.W.2d 414, 421 (Tenn.App.1984). Plaintiffs claim that this type of accident was clearly foreseeable and therefore the affirmative defense instructions should not have been allowed, as no evidence existed on which to support a verdict on correct instructions.
 
 
 28
 The plaintiffs point to the warning labels; the CGA literature dealing with warning labels and fire testing; a film made by the manufacturer entitled the "Big Three Film," which depicts acetylene cylinder explosion safety in fire; and lack of any evidence indicating that it was unforeseeable that hoses used with the acetylene unit might be in poor condition. In sum, plaintiffs contend that combustion risks associated with cylinder usage are of primary concern at every stage of cylinder production and thus the fire that ignited the explosion was foreseeable because of these general combustibility concerns.
 
 
 29
 The defendants counter that this accident was not foreseeable for a variety of reasons, including the corroded condition of the hose, the manner in which the cylinder was used, and the lack of safety instruction given to Trey Hurt. The most important issue is the factual debate over whether a general foreseeability of fire is the same as, or encompasses, foreseeability of this particular type of fire: intensely hot and concentrated flames impinging on the exterior of the cylinder. At first blush, and upon reading the parties' briefs, it appeared that fire is fire and that the foreseeability of this accident was clear. However, at oral argument, appellees presented a credible argument as to the nonforeseeability of this particular type of fire. This is a factual question that should be weighed by the trial court judge on remand to determine, in light of all the evidence presented at the new trial, whether enough evidence of nonforeseeability exists to issue jury instructions on affirmative defenses.
 
 C
 
 30
 The appellants also claim that the trial judge erred in declining to instruct the jury regarding the availability of an alternative safety device. Acetylene cylinders run the risk of explosion through a decomposition reaction between the gases. The cylinders can have internal and external safety devices to prevent explosions. Porous fillers inside the cylinder are designed to control the propagation of internal chemical reactions, while external fusible plugs are designed to melt at high temperatures and prevent the buildup of hydrogen pressure within the cylinder, thus averting an explosion. The acetylene industry also has a bursting disk safety device that responds to internal pressure, not temperature as in the fusible disks, and which bursts under sufficient pressure, thus preventing an explosion.
 
 
 31
 The acetylene container that exploded in the Hurt incident was fitted with a fusible plug on each end. The plaintiffs contend that the availability of an alternative safety device was an issue for the jury to consider with regard to the defective/unreasonably unsafe condition of the acetylene container. The court refused plaintiffs' Special Instruction No. 34, which provided:
 
 
 32
 Ladies and gentleman, under Tennessee law a product may be considered defective or unreasonably dangerous if the manufacturer failed to incorporate a safety device which was available at the time of the products [sic] manufacture and which would have prevented an injury from the use of product. (Citation omitted.)J.A. at 380. Appellants now contend that the instruction correctly stated Tennessee law and its refusal is reversible error.
 
 
 33
 The appellees counter that the DOT regulations, through their incorporation of CGA pamphlets, mandate the use of fusible plugs, and only fusible plugs, as safety devices in acetylene cylinders. Although we rejected the appellee's DOT presumption and incorporation arguments earlier, the CGA pamphlets are still the basis on which to judge industry standards. The CGA pamphlet S-1.1 specifically deals with pressure relief device standards for cylinders for compressed gases. The regulations state that "[f]or acetylene cylinders, a fire test shall be used in determining pressure relief device requirements (see Note F, Table 3)." CGA S-1.1 § 5.10, J.A. at 1047. This implies that devices meet the safety standards if they have undergone a fire test, and that the fire testing, and not the device, is the determining safety factor. Thus, if fire testing has been done, it appears that any safety device is acceptable. However, nothing on the record indicates that any fire testing has occurred on bursting disks. While the CGA pamphlet extensively discusses alternative safety devices, including fusible plugs, pressure relief systems, and combinations thereof, appellees point to Table 3 of S-1.1, J.A. at 1054, to show that the CGA documents mandate the use of fusible plugs. The table states that pressure relief devices can only be used after meeting acceptable fire tests and that only the fusible plugs have met these tests. CGA, S-1.1, Table 1 and Table 3, Note F, J.A. at 1052, 1054, 1059.
 
 
 34
 Appellants do present expert testimony as evidence of alternatives. However, as appellee Coyne points out, two defects exist with this evidence: 1) the experts' testimony does not establish that the pressure device "would have prevented injury." Rather, the testimony was more speculative, stating that the bursting disc device "would have prevented or significantly decreased the risk of explosion and injury" and 2) the testimony was about the use of bursting disc devices produced in Great Britain. Such foreign legal standards have been found excludable by the 11th Circuit, Deviner v. Electrolux Motor, A.B., 844 F.2d 769 (11th Cir.1988), and we will follow that holding.
 
 
 35
 Nonetheless, as we stated earlier, "[t]o support a jury instruction there only needs to be some evidence in the record which would support a verdict on that instruction, even though slight." Norman, 672 S.W.2d at 421. Given the plaintiffs' expert testimony, this could point to an inclusion of the instruction. However, in considering the adequacy and correctness of a jury charge, we must review the jury instructions as a whole. Howard, 812 F.2d at 287. It is unclear that it would be an abuse of discretion solely because the judge did not instruct on alternative safety devices as specifically requested by plaintiff. The evidence of the pressure valve system was discussed by experts during the trial and the appellants had the opportunity to raise the issue at closing argument. Indeed, the court did provide very similar instructions during trial. The court charged:
 
 
 36
 The plaintiffs contend that the acetylene cylinder was defective or unreasonably dangerous because Defendant Coyne failed to use available safety devices such as the pressure activated bursting disc to prevent the decomposition explosion of its cylinders.
 
 
 37
 J.A. at 1002. The judge further instructed the jury that in making the determination whether the product was defective or unreasonably dangerous:
 
 
 38
 [t]he state of scientific and technological knowledge available to the manufacturer or seller at the time of the injury is applicable. Consideration is also given to the customary designs, methods, standards and techniques of manufacturing, inspecting, and testing by other manufacturers or sellers of similar products.
 
 
 39
 J.A. at 1007. Further, the court gave no instruction that prevented the plaintiffs from making their alternative safety device argument, which they failed to raise in closing argument. It was up to the plaintiffs to interpret and present the regulations to the jury and they had the opportunity to do that through the other jury instructions.
 
 D
 
 40
 The plaintiffs' final claim is that the trial court abused its discretion by excluding the "Big Three Film" from evidence. "The Big Three Film," a video tape about the safety of acetylene cylinders, was produced by appellant Coyne and shows two acetylene-filled cylinders fitted with fusible plug safety devices undergoing bonfire tests. The film has two cylinders: a control cylinder, which does not explode, and a smaller, fuse-defective cylinder, which does explode.
 
 
 41
 Appellants wanted the film submitted in evidence and a long battle ensued over its admissibility. The court excluded it on the grounds of dissimilarity between the safety film and the Hurt incident. Also, the court ruled that even if the film were relevant, its prejudicial value would outweigh its probative value under Rule 403, Fed.R.Evid. The appellants argue that the film was the only evidence that depicted numerous elements of their case, including the release of fuse plugs under extreme pressure, the whooshing noise that occurs before an explosion, and the rebuttal of the affirmative defenses. Appellants claim that its omission was "a critical blow" to their ability to "show and explain" pertinent parts of the case.
 
 
 42
 The appellants' basic complaint is that the film was determined to be prejudicial based on the judge's own personal reaction to the film and that it was omitted based purely on the subjective observations of the judge. They also find the judge's dissimilarity rationale to be wrong, as the film was not submitted as an example or test of what happened but, rather, was offered as relevant evidence.
 
 
 43
 Under Rule 403, the trial court has the discretion to weigh the probative value of evidence against the possibility of undue prejudice. Admission of relevant but potentially prejudicial or confusing evidence is placed within the district court's sound discretion. Finch v. Monumental Life Ins. Co., 820 F.2d 1426, 1432 (6th Cir.1987). Since the film contained no information not already before the jury, the judge's omission of the film was not an abuse of discretion. There is nothing improper in the court's making a subjective determination that the film would be prejudicial; subjectivity is an inherent part of discretionary determinations. There is no indication that the court's reaction was idiosyncratic. There is an obvious possibility of prejudice from a dramatic film that resembles, but does not depict, the accident in question. The court was in a far better position than we are to weigh the prejudice against the probative value, as required by Rule 403. The plaintiffs have presented no compelling reasons why the film should be admitted or its omission ruled an abuse of judicial discretion. We affirm the district judge's evidentiary ruling to exclude the film from evidence.
 
 III
 
 44
 Finally, we hold that co-defendant Liquid Air was wrongly denied a directed verdict by the trial court. The standard of review of motions for directed verdict by the appellate court is the same as the standard used by the district court. King v. Love, 766 F.2d 962, 967 (6th Cir.), cert. denied, 474 U.S. 971, 106 S.Ct. 351, 88 L.Ed.2d 320 (1985). When reviewing a motion for directed verdict, this court should not weigh the evidence, evaluate the credibility of witnesses, or substitute its judgment for that of the jury; rather, it must view the evidence in the light most favorable to the party against whom the motion is made, and give that party the benefit of all reasonable inferences. Lewis v. Irvine, 899 F.2d 451, 454-55 (6th Cir.1990).
 
 
 45
 The motion should be granted "if there is a complete absence of pleading or proof on an issue or issues material to the cause of action or where there are no controversial issues of fact upon which reasonable men could differ." Kitchen v. Chippewa Valley Schools, 825 F.2d 1004, 1015 (6th Cir.1987) (quoting Rockwell Int'l Corp. v. Regional Emerg. Med. Serv., 688 F.2d 29, 31 (6th Cir.1982)). In a diversity action such as this one, we apply... the standard for a directed verdict used by the courts of the state whose substantive law governs the action. Tennessee courts require that a trial court presented with a motion for directed verdict must,
 
 
 46
 take the strongest legitimate view of the evidence in favor of the opponent of the motion, allow all reasonable inferences in his or her favor, discard all countervailing evidence, and deny the motion where there is any doubt as to the conclusions to be drawn from the whole evidence. A verdict should not be directed during, or after, trial except where a reasonable mind could draw but one conclusion.
 
 
 47
 In both the Tennessee and federal court systems, an appellate court reviewing a trial court's action on a directed verdict motion applies the same standard as used in the trial court.
 
 
 48
 Arms v. State Fire & Casualty Co., 731 F.2d 1245, 1248-49 (6th Cir.1984) (citations and footnote omitted).
 
 
 49
 The only theory of liability relating to Liquid Air was an inadequacy of warning claim. As discussed earlier, Liquid Air had placed a warning label on the cylinder, which included the warning: "FLAMMABLE GAS. MAY FORM EXPLOSIVE MIXTURE WITH AIR." Hurt testified that he did not even read the label that was provided. Appellants argue that although Hurt had not read this specific label, he was familiar with similar labels and had read them before. They also maintain that the warning was inadequate, as no warning was given about the danger of explosion if the cylinder was involved in a fire or if a decomposition reaction occurred. Plaintiffs' expert testimony attested that the warning label was insufficient as it only contained information every welder already knows--that acetylene is flammable--but it does not tell what to do if the cylinder is involved in a fire. This distinction is not persuasive.
 
 
 50
 Whether a warning is adequate is usually a question for the jury unless reasonable minds could not disagree on the outcome. Young v. Reliance Electric Co., 584 S.W.2d 663, 668 (Tenn.App.1979). To be considered adequate, Tennessee requires a warning to be "one calculated to bring home to a reasonably prudent user of the product the nature and the extent of the danger involved in using the product." Evridge v. American Honda Motor Corp., 685 S.W.2d 632, 636 (Tenn.1985) (citation omitted).
 
 
 51
 Under Goins v. Clorox Co., 926 F.2d 559 (6th Cir.1991), a case where summary judgment was granted to defendants because plaintiff failed to show proximate cause between injury and defective labels and because plaintiff had presented no proof that the labels had ever been read, the burden is on the plaintiff to "prove that inadequate labelling proximately caused the claimed injury." Id. at 561.
 
 
 52
 In reviewing Tennessee law on the subject of adequate warnings, the Goins court stated that a two-part test existed in Tennessee law: 1) the plaintiff must establish the product is unreasonably dangerous by reason of defective warning and 2) the plaintiff must prove that the inadequate labelling proximately caused the claimed injury. Browder v. Pettigrew, 541 S.W.2d 402, 405 (Tenn.1976). If either part is not met, the plaintiff fails to meet its burden. Here, as in Goins, no proximate cause existed between the warning label and Hurt's injury because Hurt failed to read the warning. After viewing the evidence most favorably to the plaintiff, a reasonable mind could have drawn only one conclusion: the warning label placed on the cylinder by Liquid Air was not a factor in the injuries to Hurt because there was no evidence that the warning label had ever been read and there was no evidence of causation with regard to the label.
 
 IV
 
 53
 Based on the forgoing, the decision of the district court is REVERSED and REMANDED for further proceedings consistent with this opinion.
 
 
 54
 RALPH B. GUY, Jr., Circuit Judge, concurring in part and dissenting in part.
 
 
 55
 I concur in all of the court's opinion except part II A. Although the court offers a plausible interpretation of the Department of Transportation regulations, I lean toward the interpretation placed on these regulations by the trial judge.
 
 
 
 *
 The Honorable James Harvey, Senior United States District Judge for the Eastern District of Michigan, sitting by designation