CITY OF BOSTON *vs.* COMMONWEALTH EMPLOYMENT
RELATIONS BOARD & another.[1]

Suffolk. December 1, 2008. - March 16, 2009.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Boston. Labor Relations Commission. Labor,* Unfair labor practice, Overtime
compensation, Police. *Police,* Compensation. *Municipal Corporations,*
Police. *Police Officer.*

The city of Boston (city) committed an unfair labor practice when it failed to
fulfil its obligation under State law to bargain with the union representing
the city's uniformed police officers prior to implementing a unilateral deci-
sion to adopt the partial public safety exemption under the Fair Labor
Standards Act, 29 U.S.C. §§ 201 et seq. (2000) (Act), for the purpose of
computing future overtime compensation owed to those officers, where the
Act did not preempt the State law obligation to bargain, in that there was
no explicit or implicit intent on the part of Congress to preempt the State
law obligation to bargain, and in that the State law obligation to bargain
did not conflict with the Act or stand as an obstacle to the accomplishment
of Federal objectives. [395-399]

Substantial evidence supported the conclusion of the Labor Relations Com-
mission (commission) that the city of Boston (city) engaged in an unfair
labor practice when it failed to respond in a timely manner to the request
made by the union representing the city's uniformed police officers for
information related to the city's unilateral decision to adopt the partial
public safety exemption under the Fair Labor Standards Act, 29 U.S.C.
§§ 201 et seq. (2000), for the purpose of computing future overtime com-
pensation owed to those officers; moreover, the commission was not arbitrary
or capricious in declining to excuse the city's delay; finally, substantial
evidence supported the commission's conclusion that the city's delay
diminished the union's role as bargaining representative. [399-401]

The Labor Relations Commission did not err in ordering an award of monetary
relief as a remedy for the city of Boston's (city's) unfair labor practice in
failing to fulfil its obligation under State law to bargain with the union
representing the city's uniformed police officers prior to adopting the
partial public safety exemption under the Fair Labor Standards Act, 29
U.S.C. §§ 201 et seq. (2000), for the purpose of computing future overtime
compensation owed to those officers. [401-403]

APPEAL from a decision of the Labor Relations Commission.

---

[1]Boston Police Patrolmen's Association, intervener.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Robert J. Boyle, Jr. (John Foskett* with him) for the plaintiff.

*Bryan C. Decker (Patrick Bryant* with him) for the intervener.

*Cynthia A. Spahl,* for the defendant, submitted a brief.

*Ira Fader,* for Massachusetts Teachers Association, amicus curiae, submitted a brief.

*Philip Collins, Tim D. Norris, & Daniel C. Brown,* for Massachusetts Municipal Association, amicus curiae, submitted a brief.

COWIN, J. The city of Boston (city) appeals from a decision of the Labor Relations Commission (commission)[2] that held that the city had committed unfair labor practices in its dealings with the Boston Police Patrolmen's Association (union), the exclusive bargaining representative for the city's uniformed police employees.[3] Specifically, the commission concluded that the city's unilateral decision to adopt the partial public safety exemption under the Federal Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. (2000) (Act), for the purpose of computing future overtime compensation owed to city police officers constituted a breach of the city's duty to bargain with the union in good faith under G. L. c. 150E, § 10 (*a*). See 29 U.S.C. § 207(k) (2000). The commission further determined that the city failed to share, in a timely fashion, information related to this decision that was reasonably necessary for the union to carry out its role as bargaining agent, thus committing an unfair labor practice in violation of G. L. c. 150E in that respect as well. The commission ordered the city to bargain and ordered monetary relief to compensate for economic losses incurred by the employees as a result of the city's unilateral adoption of the exemption.

The city claims that the commission's decision was erroneous because the partial public safety exemption constitutes a federally protected right that preempts what would otherwise be the city's State law obligation to bargain collectively on the subject.

---

[2]The commission's name was subsequently changed to the Commonwealth Employment Relations Board. See St. 2007, c. 145, § 5. We refer to it as the commission for purposes of this decision.

[3]As its name suggests, the union represents uniformed patrol officers on the city's police force, excluding detectives.

Like the commission, we conclude that the Act does not preempt the city's State law obligation to bargain in good faith regarding its decision whether and in what manner it will take advantage of the exemption, and that the city committed a breach of its duty to bargain with the union. Therefore, we uphold the commission's decision that the city engaged in an unfair labor practice by refusing to bargain. We also uphold the commission's decision that the city's failure to share information with the union in a timely fashion constituted an unfair labor practice. Finally, we conclude that the commission acted within its reasonable discretion in authorizing monetary damages as a remedy for the city's violation.

*Statutory and regulatory framework.* The Act establishes "a comprehensive remedial scheme requiring a minimum wage and limiting the maximum number of hours worked, absent payment of an overtime wage for all hours worked in excess of the specified maximum number." *Lamon* v. *Shawnee*, 972 F.2d 1145, 1149 (10th Cir. 1992), cert. denied, 507 U.S. 972 (1993). Section 207(a) of the Act generally requires employers to compensate employees at a premium rate of 1.5 times the "regular rate" of hourly compensation for all hours worked in excess of forty hours in a seven-day work period. See 29 U.S.C. § 207(a)(1) (2000).

Public agencies, including municipal employers, however, are allowed a partial exemption from § 207(a)'s requirements for "employee[s] in fire protection activities or . . . law enforcement activities." See 29 U.S.C. § 207(k). A municipality may take advantage of this partial exemption by adopting a longer work period[4] for the purpose of calculating overtime, provided that the work period is at least seven but no more than twenty-eight days long. See *id.* at § 207(k)(2). Such employers must compensate employees at the premium, time-and-one-half rate

---

[4]Title 29 C.F.R. § 553.224(a) (2006) explains that:

> "As used in [29 U.S.C. § 207(k) (2000)], the term 'work period' refers to any established and regularly recurring period of work which, under the terms of the Act and legislative history, cannot be less than 7 consecutive days nor more than 28 consecutive days. Except for this limitation, the work period can be of any length, and it need not coincide with the duty cycle or pay period or with a particular day of the week or hour of the day. . . ."

only if employees work a greater number of hours than that prescribed by the United States Department of Labor's regulations for the particular work period the employer has chosen. See *id.* at § 207(k)(1), (2). See also 29 C.F.R. § 553.230 (2006). As the United States Court of Appeals for the First Circuit has explained, "[t]he effect of the § 207(k) partial exemption is to soften the impact of the [Act's] overtime provisions on public employers . . . ." *O'Brien* v. *Agawam*, 350 F.3d 279, 290 (1st Cir. 2003). The statute and its accompanying regulations achieve this effect in two ways. First, the exemption "raises the average number of hours the employer can require law enforcement and fire protection personnel to work without triggering the overtime requirement." *Id.* Second, the availability of a longer work period "accommodates the inherently unpredictable nature of firefighting and police work," because generally speaking, "[t]he longer the work period, the more likely it is that days of calm will offset the inevitable emergencies, resulting in decreased overtime liability." *Id.*

*Facts and proceedings.* We summarize the commission's factual findings, each of which is supported by substantial evidence. See *Trustees of Forbes Library* v. *Labor Relations Comm'n*, 384 Mass. 559, 568 (1981). As mentioned, the union is the exclusive collective bargaining representative for a bargaining unit of uniformed police patrol officers employed by the city's police department. The city and the union have been parties to a series of collective bargaining agreements (CBAs), the most recent of which covered a period from July 1, 1996, to June 30, 2002.[5] Article IX, § 3, of the CBA defines "[o]vertime [s]ervice" as "[a]ll assigned, authorized or approved service outside or out of turn of an employee's regular scheduled tour of duty . . . including service on an employee's scheduled day off, or during his vacation, and service performed prior to the scheduled starting time for his regular tour of duty, and service performed subsequent to the scheduled time for conclusion of his regular tour of duty." Overtime service is compensated at a premium rate

[5]Although the record does not indicate whether a successor CBA has been reached, counsel informed us at oral argument that a successor CBA was negotiated and agreed to in July, 2004, and that this more recent agreement has not changed any provisions of the prior agreement relevant to this dispute.

compared with ordinary officer service. Article IX, § 4, of the CBA provides that an officer who "performs overtime service . . . shall receive, in addition to his regular weekly compensation, time-and-one-half his straight-time hourly rate for each hour of overtime service." The "straight-time hourly rate" is defined as "one fortieth of an employee's regular weekly compensation."

Beginning in late March of 2002, the city conducted a series of internal meetings, without the presence of a union representative, wherein it decided to adopt a "28-day/171-hour" work period under the Act. See 29 U.S.C. § 207(k); 29 C.F.R. § 553.230. This work period generally will result in bargaining unit members receiving less overtime pay than they would receive in four distinct "7-day/40-hour" work periods under 29 U.S.C. § 207(a). See *O'Brien* v. *Agawam, supra* at 290.

After it received notice of the city's decision to adopt the new work period, the union demanded that the city submit the issue for bargaining at forthcoming negotiations concerning the renewal of the 1996-2002 CBA, which would soon expire. The city refused to submit its decision for bargaining at negotiations regarding the successor CBA, viewing the issue as "clearly not bargainable." The city did, however, offer to meet with the union to bargain "over the impacts of the decision on [the union's] membership,"[6] but the union insisted that the issue be part of the successor CBA negotiations. The union also requested that the city provide it with certain information so that the union could prepare to bargain the city's choice to adopt the twenty-eight day work period under § 207(k). The city's police commissioner subsequently issued a special order implementing the adoption of the twenty-eight day work period, without further negotiation with the union. The city did not respond to the union's information request for approximately six months. When it appeared before the commission, the city cited the administrative disruption caused by the resignation of its director of labor relations as the reason for the delay.

Subsequently, the union filed a charge of prohibited practice

---

[6]"Impact bargaining" refers to bargaining concerning the way in which a particular management decision is implemented, and is distinct from bargaining whether management will make the decision at all. See, e.g., *School Comm. of Newton* v. *Labor Relations Comm'n*, 388 Mass. 557, 563-564 (1983).

with the commission. The charge alleged that the city had committed unfair labor practices in violation of G. L. c. 150E, § 10 (*a*) (1) and (5),[7] by refusing to bargain in good faith over its decision to adopt the new work period and by failing to share reasonably necessary information in a timely manner with the union. The commission investigated and issued a complaint of prohibited practice. After considering the parties' arguments and evidence, a hearing officer issued recommended findings of fact, which the commission later adopted in its decision with variations suggested by the parties.

In its decision, the commission rejected the city's claim that the adoption of the partial public safety exemption under the Act was not a mandatory subject of bargaining under G. L. c. 150E. The commission held that the Act did not preempt the city's State law obligation "to give the [u]nion prior notice and an opportunity to bargain to resolution or impasse about [the city's] decision to adopt a 28-day work period and the impacts of that decision." It concluded that, by refusing to bargain with the union on the subject as part of negotiations regarding the successor CBA, the city had committed an unfair labor practice in violation of G. L. c. 150E, § 10 (*a*) (1) and (5). It also determined that the city had committed an unfair labor practice in violation of § 10 (*a*) (1) and (5) by failing to provide "relevant and reasonably necessary" information in a timely manner. The commission declined to excuse the city's delay.

---

[7]General Laws c. 150E, § 10 (*a*), provides, in relevant part:

> "It shall be a prohibited practice for a public employer or its designated representative to:

> (1) Interfere, restrain, or coerce any employee in the exercise of any right guaranteed under [G. L. c. 150E];

> " . . .

> "(5) Refuse to bargain collectively in good faith with the exclusive representative as required in [G. L. c. 150E, § 6]."

Although G. L. c. 150E, § 10 (*a*) (1) and (5), "protect different interests," it has been observed that the two provisions "often travel in each other's company," and that "[v]iolation of the latter provision is almost invariably a violation of the former." *Sheriff of Worcester County* v. *Labor Relations Comm'n*, 60 Mass. App. Ct. 632, 636 (2004).

As a remedy, the commission ordered the city to "bargain collectively in good faith to resolution or impasse over the length of the work period used to calculate overtime pay under the [Act]," and further ordered the city to "[m]ake whole affected employees for the economic losses they may have suffered as a result of the [c]ity's decision to adopt a 28-day work period." The city appealed from the commission's decision. See G. L. c. 150E, § 11. We transferred the case here from the Appeals Court on our own initiative. As mentioned, we affirm the commission's decision.[8]

*Discussion.* 1. *Standard of review.* Our review of the commission's decision is governed by the principles of G. L. c. 30A, § 14. See G. L. c. 150E, § 11. See also *Worcester* v. *Labor Relations Comm'n*, 438 Mass. 177, 180 (2002). Therefore, we "accord deference to the commission's specialized knowledge and expertise, and to its interpretation of the applicable statutory provisions." *Id.* We will set the commission's decision aside only if it is "[a]rbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law." G. L. c. 30A, § 14 (7) (*g*).

2. *Duty to bargain under G. L. c. 150E.* We consider whether the city committed an unfair labor practice by failing to fulfil its obligation under State law to bargain with the union prior to implementing a unilateral change in employee working conditions. Under G. L. c. 150E, § 6, both the city and the union must "negotiate in good faith with respect to wages, hours . . . and any other terms and conditions of employment." See *Commonwealth* v. *Labor Relations Comm'n*, 404 Mass. 124, 127 (1989) ("A public employer has a duty to bargain in good faith and, short of impasse, it may not unilaterally implement changes to a mandatory subject of bargaining without negotiation").

The city's main argument in support of its position that it need not bargain with the union, notwithstanding the requirements of G. L. c. 150E, is that 29 U.S.C. § 207(k) gives it a federally protected right that preempts any State law obligation to bargain. The city argues in this regard that the enforcement of State collective bargaining law in this case improperly encumbers the city's decision to take advantage of the Federal

---

[8]We acknowledge the amicus briefs of the Massachusetts Municipal Association and the Massachusetts Teachers Association.

partial public safety exemption, thereby frustrating the purpose behind Congress's enactment of § 207(k).

In support of its position, the city points to legislative history indicating that Congress deleted language from the final version of the bill enacting § 207(k) that would have made adoption of the exemption conditional upon collective bargaining, and observes that similar language was included in other provisions of the Act. See S. Conf. Rep. No. 93-758, 93d Cong., 2d Sess. 26-27 (1974). Compare 29 U.S.C. §§ 203(o), 207(b)(1) & (2), 207(f), and 207(o)(2) (2000), with 29 U.S.C. § 207(k) (2000). The city relies also on an interpretation of § 207(k) by the United States Department of Labor that concludes that municipalities are not required by the Act to engage in collective bargaining before adopting the § 207(k) exemption. See 52 Fed. Reg. 2025 (1987). Finally, the city cites a number of Federal cases, arguing that in these cases "[S]tate collective bargaining obligations played no role and presented no hurdles" to the public employer's decision to adopt a § 207(k) work period. See *Franklin* v. *Kettering*, 246 F.3d 531, 535-536 (6th Cir. 2001); *Lamon* v. *Shawnee*, 972 F.2d 1145, 1151-1154 (10th Cir. 1992), cert. denied, 507 U.S. 972 (1993); *Ball* v. *Dodge City*, 842 F. Supp. 473, 474-475 (D. Kan. 1994), aff'd, 67 F.3d 897 (10th Cir. 1995).

A Federal statute may preempt State law when it explicitly or by implication defines such an intent, or when a State statute actually conflicts with Federal law or stands as an obstacle to the accomplishment of Federal objectives. See *Sawash* v. *Suburban Welders Supply Co.*, 407 Mass. 311, 314 (1990). Whether a Federal statute preempts State law is ultimately a question of Congress's intent. See *Commonwealth* v. *College Pro Painters (U.S.) Ltd.*, 418 Mass. 726, 728 (1994); *Archambault* v. *Archambault*, 407 Mass. 559, 565 (1990). Unless Congress's intent to do so is clearly manifested, a court does not presume that Congress intended to displace State law on a particular subject, and will not so conclude. See *Sawash* v. *Suburban Welders Supply Co.*, *supra* at 315.

We are not persuaded that Congress intended § 207(k) to abrogate a municipality's obligation under State law to bargain collectively with its employees regarding the calculation of

employee overtime compensation. Unlike other Federal statutes, the Act does not contain an express preemption provision. Nor has Congress shown an intent that the Act occupy completely the field of labor standards, displacing all State law on the subject. See 29 U.S.C. § .218(a) (2000) ("[n]o provision of [the Act] or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under [the Act] or a maximum work week lower than the maximum work week established under [the Act]").[9]

Contrary to the city's contentions, we are unable to identify any "conflict" between Federal law and State law in the present case, given that the city may make an election under § 207(k) while still complying with its State law collective bargaining obligations under G. L. c. 150E. By its terms, § 207(k)'s language is permissive, not mandatory. The provision does not require the city to do anything. Rather, the statute merely gives the city an opportunity to select a work period for its law enforcement employees different from the typical seven-day, forty-hour period prescribed in § 207(a). At most, § 207(k) allows the city to choose from a greater range of permissible overtime calculation formulas than would otherwise be available under the Act. However, Congress has demonstrated no preference regarding a municipality's choice to avail itself of this greater flexibility. Indeed, a municipality may choose not to avail itself of the partial exemption at all. Even if it does take advantage of § 207(k), a municipality may choose among twenty-two different work period options specified in United States Department of Labor regulations, see 29 C.F.R. § 553.230 (2006), each of which subjects the municipality to a greater or lesser amount of potential overtime liability. *O'Brien* v. *Agawam*, 350 F.3d 279, 290 (1st Cir. 2003).

Nor does the enforcement of the city's State law collective

---

[9]Indeed, the language of 29 U.S.C. § 218(a) (2000) makes clear that the labor standards mandated by the Act are merely a floor below which State law may not fall, not a ceiling above which it may not rise. Although the language of § 218(a) does not control the resolution of the question before us, it is an indication of Congress's intent regarding the role to be played by State law and by the Act in ameliorating the working conditions of employees. See *Commonwealth* v. *College Pro Painters (U.S.) Ltd.*, 418 Mass. 726, 728 (1994) ("The touchstone of preemption is congressional intent").

bargaining obligation "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Sawash* v. *Suburban Welders Supply Co., supra,* quoting *Michigan Canners & Freezers Ass'n* v. *Agricultural Mktg. & Bargaining Bd.,* 467 U.S. 461, 469 (1984). The Act's express purpose is to improve the working conditions of employees. See 29 U.S.C. § 202(b) (2000). The State law obligation to bargain collectively regarding a management decision that has a direct and significant effect on the amount of employees' overtime compensation, see *O'Brien* v. *Agawam, supra,* is consistent with this purpose. It follows that a State law requirement that the city must bargain with the union regarding the § 207(k) work period to be adopted does not pose an "obstacle" to accomplishing the purposes Congress sought to achieve in enacting the Act. Cf. *Cranford* v. *Slidell,* 25 F. Supp. 2d 727, 728-729 (E.D. La. 1998) (concluding that overtime compensation formula mandated by State law controlled over § 207[k] exemption pursuant to provision of Act providing that employers must abide by other laws that mandate higher minimum wages or lower maximum work weeks); *Karr* v. *Beaumont,* 950 F. Supp. 1317, 1324 (E.D. Tex. 1997) (same); *Pijanowski* v. *Yuma County,* 202 Ariz. 260, 265 (Ct. App. 2002) (same); *Marie* v. *New Orleans,* 612 So. 2d 244, 245-246 (La. Ct. App. 1992) (concluding that § 207[k] does not preempt State constitutional requirement for city to adopt uniform pay plan for police officers).

We have considered the authorities cited by the city, and conclude that they do not advance its position. The legislative history to which the city points fails to persuade us that Congress intended to grant municipalities the right to choose how they calculate Federal overtime compensation for their public safety employees without regard to State law collective bargaining obligations. At best, the legislative history of § 207(k) and the Federal Department of Labor's interpretation of that provision, see 52 Fed. Reg. 2025 (1987), demonstrate only that Congress did not intend to impose a *Federal* requirement that public employers bargain collectively with public safety employees as a prerequisite to claiming the exemption. Moreover, State law does impose such an obligation. See G. L. c. 150E, § 6. The city points to nothing which convinces us that Congress intended to

obliterate that obligation with respect to the election of the method by which overtime pay would be calculated.

In addition, although the city cites a number of Federal cases that, it claims, support its position, a close reading of those decisions shows that they do not address the question before us. Indeed, all of the cases cited by the city involved claims for alleged violations of the Act itself. In contrast, the union's claim in this case alleges that the city has violated G. L. c. 150E, not the Act. Furthermore, the issue before the court in each of the cited cases was whether the municipal employer had properly adopted a § 207(k) work period. None of the plaintiffs in any of the cases appeared to argue that their employers' decisions had to be bargained under either State or Federal law. See *Franklin* v. *Kettering, supra*; *Lamon* v. *Shawnee, supra*; *Ball* v. *Dodge City, supra*.

With the conclusion that the city's obligation to bargain with respect to the election under § 207(k) is not preempted by Federal law, it follows that the city's refusal to bargain on the subject violated G. L. c. 150E. The city unilaterally adopted a twenty-eight day work period under the Act for the purpose of calculating the overtime compensation to which employees are entitled, and did so without giving the union prior notice or an opportunity to bargain. As mentioned, Federal law provides the city a wide range of choices regarding the length of the work period it may use for overtime calculations. See 29 C.F.R. §§ 553.224(a), 553.230 (2006). The length of the work period will have a significant impact on the amount of overtime pay bargaining unit members are likely to receive. See *O'Brien* v. *Agawam, supra*. Because the § 207(k) work period affects the "wages" that employees receive, i.e., the amount (if any) of overtime for which they must be paid, we conclude it is a mandatory subject of bargaining under G. L. c. 150E, § 6. Therefore, the city was obligated under G. L. c. 150E to bargain in good faith with the union regarding the length of the work period it would choose to adopt under § 207 of the Act.[10]

3. *Delayed disclosure of information.* The city complains that

---

[10]The city argued to the commission that the union had waived its right to bargain regarding the length of the work period by insisting that the issue be part of negotiations for the successor CBA, rather than accepting the city's

the commission's decision not to excuse the city's failure to respond to the union's information requests in a timely manner, see *supra,* was arbitrary and capricious. As mentioned, our review of the commission's decision is governed by G. L. c. 30A, § 14. See *Sheriff of Worcester County* v. *Labor Relations Comm'n,* 60 Mass. App. Ct. 632, 636 (2004).

The commission's past decisions have established that the city's obligation to deliver relevant and reasonably necessary information in a timely manner follows logically from its duty to bargain in good faith, and the failure to fulfil this obligation is itself an unfair labor practice under G. L. c. 150E, § 10 (*a*). See *City of Somerville,* 29 M.L.C. 199, 202 (2003); *City of Boston,* 29 M.L.C. 165, 167 (2002); *Board of Higher Educ.,* 26 M.L.C. 91, 92-93 (2000). The reasonableness of the employer's delay is judged by whether the union's ability to fulfil its role as the exclusive bargaining representative of the bargaining unit is "diminishe[d]." See *Board of Higher Educ., supra* at 93; *Massachusetts State Lottery Comm'n,* 22 M.L.C. 1468, 1472 (1996). The city does not dispute that the information that the union sought was both relevant and reasonably necessary for the union to fulfil its mission. Moreover, the commission made a finding to that effect, and that finding is amply supported by substantial evidence contained in the record.

The city argues that the commission's decision was arbitrary and capricious in declining to excuse the city's delay because the information the city eventually did produce adequately responded to the union's request; that the city explained the reasons for its delay in producing the requested information; and that the record

invitation to bargain the impacts of the decision to adopt a twenty-eight day work period apart from such negotiations. Relying on its decision in *Town of South Hadley,* 27 M.L.C. 161, 163 (2001), the commission held that the union's demand to bargain the issue as part of the successor CBA negotiations did not constitute a waiver. See *Town of Brookline,* 20 M.L.C. 1570, 1596 n.20 (1996) (public employer may not insist on bargaining individual issues separately during same period when parties historically engaged in bargaining for successor collective bargaining agreement). The city argues that the commission's so-called "*Brookline* doctrine," see *Town of Brookline, supra,* should be overruled because it gives an unfair advantage to public employee unions in their negotiations with public employers. However, because the city never presented this argument to the commission, it is deemed waived, and we do not consider it. See *Albert* v. *Municipal Court of Boston,* 388 Mass. 491, 493-494 (1983).

does not show that the city's delay diminished the union's role as the exclusive representative of its bargaining unit. These contentions are without merit. The fact that the city eventually provided a satisfactory response, of course, does not answer the union's complaint that the requested information was delivered late. Furthermore, the commission acted well within its discretion in rejecting the city's main explanation for its delay, i.e., the fact that the city's labor relations director resigned approximately three months after the union requested the information.

Finally, the commission's conclusion that the city's delay diminished the union's role as bargaining representative is supported by substantial evidence. The harm to the union caused by the city's delay is clear. The union's inability to explain adequately the city's decision to the members of its bargaining unit or to answer their questions about a subject matter that would directly affect their overtime pay "impeded the [u]nion from effectively fulfilling its role as exclusive representative." *Board of Higher Educ., supra.* The union was also entitled to the information so that it could prepare to bargain with the city by formulating reasonable proposals. See *Boston Sch. Comm.*, 25 M.L.C. 181, 196 (1999). The city argues that the union was not stymied in its efforts to formulate proposals because its position "was always crystal clear." However, as the commission observed, much of the reason why the union had no immediate need for the information it requested is because of the city's own refusal to bargain in violation of G. L. c. 150E. The city cannot rely on its own unlawful conduct to argue that the union was not harmed.

4. *Remedy.* The city complains that the remedy granted by the commission, i.e., ordering the city to "[m]ake whole affected employees for the economic losses they may have suffered as a result of the [c]ity's decision to adopt a 28-day work period," was erroneous. We do not agree.

General Laws c. 150E, § 11, mandates that, "if the commission determines that a prohibited practice has been committed, it shall order the violator to cease that practice 'and shall take such further affirmative action as will comply with the provisions of [§ 11].' " *School Comm. of Newton* v. *Labor Relations Comm'n*, 388 Mass. 557, 575 (1983). "[F]urther affirmative action" may include the award of monetary relief. See *Labor*

*Relations Comm'n* v. *Everett*, 7 Mass. App. Ct. 826, 829-831 & n.6 (1979), citing *School Comm. of Stoughton* v. *Labor Relations Comm'n*, 4 Mass. App. Ct. 262, 270 (1976) ("[O]ne may be 'reinstated' to a former status and awarded back pay even though he has not been discharged"). The award of monetary relief pursuant to G. L. c. 150E, § 11, does not "dictat[e] an agreement between the parties," but "rather . . . restores the status quo." *School Comm. of Newton* v. *Labor Relations Comm'n, supra* at 576.

Here, the city assails the commission's award of monetary relief on the ground that it impermissibly creates State law remedies for the violation of the Act.[11] See *Anderson* v. *Sara Lee Corp.*, 508 F.3d 181, 194 (4th Cir. 2007) (State law causes of action cannot provide remedies for violations of Federal rights under Act "[b]ecause the [Act's] enforcement scheme is an exclusive one"). The city misses the point. The commission's order does not attempt to remedy any violation of the Act; indeed, the union has not claimed that such violation occurred. The monetary relief ordered by the commission seeks only to remedy any economic losses incurred by members of the bargaining unit as a result of the city's violation of State law.

Having found a prohibited labor practice, the commission has power under G. L. c. 150E, § 11, to choose, in its discretion, "to order the employer to make whole" affected employees in cases where economic harm results. *Labor Relations Comm'n* v. *Everett, supra* at 830. The commission seeks "to restore the situation as nearly as possible to that which would have existed but for the unfair labor practice," *id.* at 831, and to preserve it until bargaining produces either a resolution or an impasse. See *School Comm. of Newton* v. *Labor Relations Comm'n, supra* at 576; *Commonwealth* v. *Labor Relations Comm'n*, 60 Mass.

---

[11]Before the commission, the city argued that it would be error for the commission to order a remedy seeking to restore the status quo ante because "[t]he status quo ante was an illegal situation in which the [c]ity was in violation of [F]ederal law by not tracking patrol officer hours and determining the amount of premium pay owed, as provided under the [Act]." The city alludes to this argument in a single footnote in its reply brief, but "[a]rguments relegated to a footnote do not rise to the level of appellate argument." *Commonwealth* v. *Lydon*, 413 Mass. 309, 317-318 (1992). Pursuant to Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 971 (1975), the argument is waived and we do not consider it.

App. Ct. 831, 835 (2004). There have been times when the commission has declined to grant such relief. See, e.g., *Commonwealth of Massachusetts (Comm'r of Admin.)*, 4 M.L.C. 1869, 1878 (1978) (no monetary make-whole remedy because "employees would then have to give the money back in some form," making remedy inconvenient, expensive, and futile). However, the fact that the commission has declined to award such relief in some cases does not mean it was wrong to do so here. See *Therrien* v. *Labor Relations Comm'n*, 390 Mass. 644, 648 (1983).

*Conclusion.* We affirm the commission's decision that the city has committed prohibited practices under G. L. c. 150E, § 10 (*a*) (1) and (5), in failing to bargain collectively with the union in good faith and in failing to share relevant information with the union in a timely manner. We also affirm the remedy ordered, i.e., to "[m]ake whole affected employees for the economic losses they may have suffered as a result of the [c]ity's decision to adopt a 28-day work period."

*So ordered.*