SECRETARY OF ADMINISTRATION & FINANCE vs.
COMMONWEALTH EMPLOYMENT RELATIONS BOARD
& another.[1]

No. 10-P-991.

Suffolk. April 4, 2011. - January 3, 2012.

Present: COHEN, KATZMANN, & VUONO, JJ.

*Commonwealth Employment Relations Board. Practice, Civil,* Appeal, Statute
of limitations. *Rules of Appellate Procedure. Limitations, Statute of.*

A party seeking judicial review of a decision of the employment relations
board (board) complied with the filing requirements for such an appeal by
timely filing a notice of appeal with the board, where the board was the
appropriate "lower court" for purposes of Mass.R.A.P 3(a). [82-85]
The employment relations board erred in concluding that a union's claim
against an employer was not time barred by the six-month limitations
period in the relevant regulation, where the union did not file its claim
until seven months after it knew or should have known of the alleged
violation, and the union's delay in filing did not satisfy the regulation's
exception for good cause shown. [85-89]


APPEAL from a decision of the Commonwealth Employment
Relations Board.

David A. Guberman, Assistant Attorney General, for the
plaintiff.

*Stephen C. Pfaff* for the intervener.

*Erica F. Crystal* for Commonwealth Employment Relations
Board.

KATZMANN, J. The Secretary of the Executive Office of Admin-
istration and Finance (A & F) appeals from a decision and order
of the Commonwealth Employment Relations Board (board).[2]
In its July 27, 2007, decision the board found that A & F had

[1]Massachusetts Correction Officers Federated Union, intervener.
[2]Formerly the Labor Relations Commission. (See G. L. c. 23, § 9O, as
amended through St. 2007, c. 145, § 5.) References to the board include the
former Labor Relations Commission.

repudiated the terms of a memorandum of understanding (memorandum) with the Massachusetts Correction Officers Federated Union (union or MCOFU) when A & F did not use appropriated funds[3] to pay for costs associated with mediation and dispute resolution but, instead, used those funds to pay existing employees of the human resources division of the Office of Employee Relations (OER).[4,5]

We address first the contention that A & F's appeal should be dismissed because it failed to comply with the filing requirements for judicial review. We then consider whether the union's charge of repudiation of the memorandum by A & F was filed within the six-month limitations period.[6]

*Discussion.* A. *Filing requirements for A & F's appeal.* The union, as intervener, argues that the Appeals Court does not have

---

[3]Line items 1599-4005 of St. 2000, c. 354, state, in pertinent part, "[A] total of $300,000 . . . shall be made available to meet the commonwealth's obligations pursuant to the provisions of memorandums [*sic*] of understanding signed October 13 [*sic*], 2000 and shall not expire until June 30, 2004."

[4]The initial procedure here resembles that described in *Sheriff of Worcester County* v. *Labor Relations Commn.*, 60 Mass. App. Ct. 632, 633 n.2 (2004).

[5]The October 10, 2000, memorandum between A & F and the union states that the parties agree to:

"1. . . . the establishment of a Joint Labor/Management Committee, consisting of three (3) members designated by MCOFU and three (3) members designated by [A & F]. Said Committee shall meet and develop mutually agreed-upon policies and implementation procedures for an Alternative Dispute Resolution Program . . . . Only with the consent of both parties will a grievance be referred to Alternative Dispute Resolution (ADR). Nothing in this [memorandum] constrains MCOFU's ability to utilize the grievance procedure . . . .

"2. The Committee will make every effort to recommend an Alternative Dispute Resolution pilot program within six (6) months from the signing of the agreement.

". . .

"4. [A & F] shall establish a fund of three hundred thousand dollars ($300,000) effective January 1, 2001 to be used to pay costs associated with mediation and dispute resolution.

"5. The parties agree to operate this pilot program for a period of three years, effective from the date of signing . . . ."

[6]In view of our resolution of these two issues, we do not consider whether the board erred in concluding that the agreement had been repudiated.

authority to consider this case because A & F did not comply with the filing requirements of G. L. c. 150E, § 11 (§ 11). The relevant portion of § 11, as amended by St. 1981, c. 351, § 245 (1981 amendment), stated:

> "Any party aggrieved by a final order of the commission may institute proceedings for judicial review in the appeals court within thirty days after receipt of said order. The proceedings in the appeals court shall, insofar as applicable, be governed by section 14 of chapter thirty A."[7]

Here, the board issued its decision on July 27, 2007. Pursuant to the board's instructions,[8] A & F filed its notice of appeal with the board on August 27, 2007. The union argues that "[s]uch a filing of the notice of appeal with the [board] has no effect; the proper procedure is a petition for judicial review directly with the Appeals Court within thirty days of the [board's] decision, which was never done." We disagree.

As originally drafted in 1973, and as amended before 1981, G. L. c. 150E, § 11, contained no specific provision for review of the board's decisions. See St. 1973, c. 1078, § 11. Appeals from the board could first be brought in Superior Court pursuant to G. L. c. 30A, § 14 (§ 14). See *Labor Relations Commn. v. Everett,* 7 Mass. App. Ct. 826, 828 (1979). In 1981, however, the Legislature added the language to G. L. c. 150E, § 11, previously quoted (the 1981 amendment), specifically providing for judicial review in the Appeals Court. Subsequent to the 1981 amendment, the appeals pursuant to § 11 were only governed by § 14 "insofar as applicable."

The 1981 amendment does not explicitly address whether § 14 governs the procedure for *filing* appeals. The Massachusetts

---

[7]General Laws c. 150E, § 11, was rewritten by St. 2007, c. 145, § 7, effective November 12, 2007. The relevant language quoted here is now contained, with minor alterations, in G. L. c. 150E, § 11(*i*). Although we cite the statute as it was in effect at the time that A & F filed its appeal, the 2007 amendment to the statute would not affect the outcome.

[8]The following instructions about the appeals process were included at the bottom of the board's July 27, 2007, decision:

> "To claim . . . an appeal, the appealing party must file a Notice of Appeal with the [board] within thirty (30) days of receipt of this decision. No Notice of Appeal need be filed with the Appeals Court."

Rules of Appellate Procedure, however, specifically "govern procedure in appeals to an appellate court." Mass.R.A.P. 1(a), 365 Mass. 844 (1974).[9] These rules were promulgated in 1974 and thus were in effect in 1981 when § 11 was amended. We presume that the Legislature was aware of the Massachusetts Rules of Appellate Procedure when it enacted the 1981 amendment to change the appeal of board decisions from the Superior Court to the Appeals Court. See *Paquette* v. *Commonwealth*, 440 Mass. 121, 130 (2003) ("The Legislature is presumed to be aware of existing statutes when it amends a statute or enacts a new one"). We also presume that the Legislature did not provide specific procedures in § 11, knowing that the Appeals Court had detailed appellate procedural requirements in place in the form of the rules that already existed when the 1981 amendment was enacted. In sum, we conclude that in specifying the Appeals Court as the proper forum for § 11 review, the Legislature intended to leave procedural details, such as filing requirements, to the existing Massachusetts Rules of Appellate Procedure.[10] See *Carpenter's Case*, 456 Mass. 436, 446 (2010), quoting from *Harvard Crimson, Inc.* v. *President & Fellows of Harvard College*, 445 Mass. 745, 749 (2006) ("Courts must ascertain the intent of a statute from all its parts and from the subject matter to which it relates, and must interpret the statute so as to render the legislation effective, consonant with sound reason and common sense").

Consistent with the Massachusetts Rules of Appellate Procedure, the appropriate court with which to file a notice of appeal is governed by Mass.R.A.P. 3(a), as amended, 378 Mass. 927 (1979) (rule 3[a]), which states that "[a]n appeal permitted by law from a lower court shall be taken by filing a notice of appeal with the clerk of the lower court within the time allowed by Rule 4."[11] Massachusetts Rule of Appellate Procedure 1(c),

---

[9]Massachusetts Rule of Appellate Procedure 1(e) provides that " 'Appellate Court' means the full Supreme Judicial Court, the full Appeals Court, or a statutory quorum of either, as the case may be, whichever court is exercising statutory jurisdiction over the case at bar." Mass.R.A.P. 1(e), 365 Mass. 844 (1974).

[10]Section 14 controls elements of the review of board decisions pursuant to § 11 by, for example, specifying the standard of review.

[11]The 1973 Reporters' Notes to rule 3(a), 47 Mass. Gen. Laws Ann. at 999

365 Mass. 844 (1974), states that "[a]s used in these rules: . . . 'lower court' means the . . . *board*, commission, or other body whose decision is the subject of an appeal" (emphasis added). Thus, pursuant to these rules, the board is the "lower court" for the purpose of rule 3(a). In keeping with these rules, the board, when it issues a final decision, notifies the parties of their rights to appeal and advises that any notice of appeal must be filed with the board, and not with the Appeals Court. See note 8, *supra* (quoting the instructions provided to the parties). In short, A & F complied with the filing requirements for judicial review, and dismissal is not appropriate.[12] We thus proceed to A & F's appeal.

B. *Limitations period.* On appeal, "[o]ur review of the [board's] decision is governed by the principles of G. L. c. 30A, § 14. See G. L. c. 150E, § 11. See also *Worcester* v. *Labor Relations Comm'n*, 438 Mass. 177, 180 (2002). Therefore, we 'accord deference to the [board's] specialized knowledge and expertise, and to its interpretation of the applicable statutory provisions.' *Id.* We will set the [board's] decision aside only if it is '[a]rbitrary or capricious, an abuse of discretion, or otherwise

(West 2006), further emphasize that "[a]n appeal is initiated by filing in *the lower court* a notice of appeal . . ." (emphasis original). Additionally, Mass. R.A.P. 4(a), as amended, 430 Mass. 1603 (1999), provides that "[i]f a notice of appeal is mistakenly filed in an appellate court, the clerk of such appellate court shall note the date on which it was received and transmit it to the clerk of the lower court from which the appeal was taken and it shall be deemed filed in such lower court on the date so noted." Thus, had the notice of appeal here been filed at the Appeals Court, rule 4(a) would have required the clerk to transmit the notice of appeal to the board.

[12]*Chicopee Fire Fighters Assn., Local 1710* v. *Brown*, 432 Mass. 1015, 1015 (2000), cited by the union, is inapposite. There, the court held that the aggrieved party ran afoul of the statutory requirement of G. L. c. 150E, § 11, by "instituting an action in the District Court." *Ibid.* Moreover, the court stated that "if an aggrieved party elects to prosecute an appeal, such as here, that party must do so in the Appeals Court." *Ibid.* Here, A & F appropriately filed its notice of appeal with the board, and indeed prosecuted its appeal in the Appeals Court in compliance with the statutory requirements of G. L. c. 150E, § 11.

We also distinguish *Massachusetts Community College Council MTA/NEA* v. *Labor Relations Commn.*, 402 Mass. 352, 353 (1998), also cited by the union, where the court stated that "[the appellant] then filed a timely notice of appeal with the Appeals Court pursuant to G. L. 150E, § 11." The filing requirements of G. L. c. 150E, § 11, were not at issue in that case, and therefore, it does not appear that the court was addressing the intricacies of the statutory requirement as they related to the Massachusetts Rules of Appellate Procedure.

not in accordance with law.' G. L. c. 30A, § 14(7)(g)." *Boston v. Commonwealth Employment Relations Bd.*, 453 Mass. 389, 395 (2009).

The union originally filed a claim against A & F for failing to comply with the terms of the memorandum.[13] As has been noted, the union contended that A & F had violated the memorandum in using portions of a $300,000 fund — which was "to be used to pay costs associated with mediation and dispute resolution" — to pay salaries of existing OER employees. OER is an office that "administers and negotiates collective bargaining agreements for the Commonwealth's executive branch agency" and is involved in resolving union grievances, including through mediation. Before the board, besides arguing on the merits that it had not repudiated the memorandum and had used the fund for its stated purpose, A & F urged that the union's claims of repudiation were barred by the six-month limitations period in the relevant regulation. That regulation provides: "Except for good cause shown, no charge shall be entertained by the Division based upon any prohibited practice occurring more than six months prior to the filing of a charge with the Division." 456 Code Mass. Regs. § 15.03 (1999). The board found that because the evidence did not suggest that the union " 'knew or should have known' before April 19, 2005[14] that A & F had expended the substantial amount disclosed by the evidence," the union's claims of repudiation were not barred by 456 Code Mass. Regs. § 15.03. A & F disagrees.

A & F argues that after the union received A & F's October 3, 2002, letter,[15] it knew that A & F had begun spending the $300,000 appropriated for compliance with the terms of the

---

[13]The union charged that A & F engaged in prohibited practices in violation of G. L. c. 150E, § 10(a)(5), and derivatively, § 10(a)(1).

[14]In a letter to the union dated April 19, 2005, A & F stated that it had spent $293,115.02 of the $300,000 fund.

[15]On September 4, 2002, the union sent a letter to A & F requesting additional information about funds appropriated, "to pay costs associated with mediation and dispute resolution." A & F's October 3, 2002, response to the union stated:

> "Please be advised that the funds appropriated by [A & F] for the various Alternative Dispute Resolution (ADR) programs have been crucial to the ability of this office to meet its obligations under the contractual

memorandum. *Boston Police Superior Officers Fedn.* v. *Labor Relations Commn.*, 410 Mass. 890, 892 (1991) (six-month period begins to run when "complainant knew or should have known of the alleged violation," citing *City of Pittsfield*, 4 M.L.C. 1905, 1908 [1978]). Thus, A & F argues that by waiting seven months to file a charge on May 6, 2003, the union exceeded the limitations period.

The board erred when it found that the union's claim was not time barred by the six-month limitations period.[16] Consistent with the assertions of A & F, the October 3, 2002, letter "informed the union that $3,000 of the $300,000 fund had been spent '[s]pecifically' to resolve 'more than 150 [MCOFU] grievances' 'under the contractual dispute resolution processes.' " At this time, the union was fully aware that the joint labor management committee had not been created and, therefore, that the ADR program contemplated by the memorandum could not have been implemented. See note 3, *supra*. Moreover, as the board found, in October, 2002, the director and assistant director of the OER told the union executive board members that A & F intended to use the $300,000 fund to pay OER salaries. Consequently, the union's "apprehension should reasonably have been aroused" when in light of the aforementioned circumstances, A & F also indicated that it had begun spending money from the very fund dedicated to pay costs associated with the unestablished program. *Felton* v. *Labor Relations Commn.*, 33 Mass. App. Ct. 926, 927-928 (1992) ("A wrong . . . is not inherently unknowable if the injured party, in the exercise of reasonable diligence, should have known of the factual basis for the wrong").

The union argues that the six-month statute of limitations

dispute resolution processes. Specifically, more than 150 MCOFU grievances have been adjudicated, withdrawn or settled through this program during this calendar year alone. There is currently $297,000 remaining in the unit 4 ADR account.

"[A & F] has designated the following individuals to serve as committee members on the Joint Labor Management Committee . . . . Please let me know who will serve as the representatives from MCOFU."

[16]Because the union has never alleged a continuing violation, we need only determine whether the alleged violations occurred more than six months before the union filed its charge with the board.

period began to run on February 10, 2003, the date it responded to A & F's October 3 response, seeking additional information.[17] The evidence does not suggest that the union acquired any additional information relative to A & F's alleged violations during the time period between October 3 and February 10, thereby rendering "the factual basis of knowledge for the wrong" on February 10 indistinguishable from that existing on October 3. Instead, the union's February 10 letter was merely a response to the "suspicious circumstances" which surfaced upon its receipt of A & F's October 3 response. *Malapanis* v. *Shirazi*, 21 Mass. App. Ct. 378, 383 (1986). "When, as here, the parties press different events as triggering accrual, the factual inquiry focuses on which was the first event reasonably likely to put the plaintiff on notice that the defendant's conduct has caused him injury." *Szymanski* v. *Boston Mut. Life Ins. Co.*, 56 Mass. App. Ct. 367, 371 (2002). The first event reasonably likely to have put the union on notice occurred on October 3. While the union may well have received a clearer understanding of A & F's alleged repudiation of the memorandum on April 19, 2005, the earlier date triggered the running of the limitations period. Consequently, the board's determination that April 19, 2005, constituted the critical moment when the limitations period began to run is not in accordance with established precedent.

Thus, this is not a case where the complainant's delay in filing satisfies the regulation's good cause exception. 456 Code Mass. Regs. § 15.03. The board erred in determining that because the union's February 10 letter was a genuine and reasonable attempt to obtain "full and fair answers" to A & F's October 3 response, the union was not sufficiently on notice after it received A & F's

---

[17]The text of the February 10 letter was never included in the record below and is therefore not properly before us on appeal. See Mass.R.A.P. 8(a), as amended, 378 Mass. 932 (1979) ("The original papers and exhibits on file, the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the lower court shall constitute the record on appeal in all cases"). However, at the hearing before the board, a union representative testified to aspects of the letter during cross-examination. Based on this testimony, the board concluded that the February 10 letter "express[ed] concerns and [sought] additional information about subjects that [A & F] referred to in [its] October 3 letter, including the ADR program, the remaining $297,000 and the [150] grievances." We reference the February 10 letter only to the extent of these findings by the board.

October 3 response. Notice starting the running of the limitations period "refers not to discovery of every fact necessary to prevail on the claim" but rather to possession of facts suggesting injury by the defendant. *Szymanski* v. *Boston Mut. Life Ins. Co.*, 56 Mass. App. Ct. at 371 (citations omitted). See *Town of Lenox*, 29 M.L.C. 51, 52 (2002) (statute of limitations began to run on the date that the employer announced its decision to increase prescription drug copayments, not on the date when the increase was actually implemented). Here, the union was alerted on October 3 that the A & F commenced spending for a purpose that the union deemed inconsistent with the memorandum. Contrast *Barnard Engr. Co.*, 295 N.L.R.B. 226, 226-227 (1989) (complainant's delay reasonable where defendant unlawfully refused to provide the requested information and fraudulently concealed key details with an intent to mislead). For the foregoing reasons, we reverse the board's determination that the union's charge was not barred by the six-month limitations period.

*Conclusion.* The decision and order of the board are reversed. A new order shall enter consistent with this opinion.

*So ordered.*